**ROBINSON BROG LEINWAND GREENE**
 **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
Proposed Attorneys for the Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re                                              Chapter 11

**RICHMOND LIBERTY LLC**,           Case No.: 15-44866 (ESS)

                     Debtor.

-------------------------------------------------------X
**RICHMOND LIBERTY LLC,**

                Plaintiff,           Adv. Proc. No.:

     v.

**WF LIBERTY LLC, LIBERTY TOWERS**
**REALTY LLC, and**
**LIBERTY TOWERS REALTY I LLC,**

                Defendants.
-------------------------------------------------------X

## **COMPLAINT**

Plaintiff/debtor Richmond Liberty LLC ("Debtor") by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for its complaint against defendant WF Liberty LLC ("WF"), Liberty Towers Realty LLC ("LTR") and Liberty Towers Realty I LLC ("LTR I"), alleges, on knowledge as to itself and to all other matters on information and belief, as follows:

### **JURISDICTION AND VENUE**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, as this matter arises in, under, and is related to a pending

bankruptcy case. This matter is a core proceeding under 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are §§ 105(a) and 362(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7065. Venue in this District is proper pursuant to 28 U.S.C §§ 1408 and 1409.

2. This adversary proceeding is initiated under Bankruptcy Rule 7001(7) and (9), and the relief requested may be ordered pursuant to Bankruptcy Rule 7065 and §§ 105(a) and 362(a) of the Bankruptcy Code.

## THE PARTIES

1. The Debtor is a New York limited liability company that maintains a principal place of business at 825 Third Avenue, 37th Floor, New York, New York 10022.

2. WF is a New York limited liability company with an address at 360 Lexington Avenue, 13th Floor, New York, New York 10017.

3. LTR is a New York limited liability company that maintains a principal place of business at 1877 E. 9th Street, Brooklyn, New York 11223.

4. LTR I is a New York limited liability company that maintains a principal place of business at 1877 E. 9th Street, Brooklyn, New York 11223.

## FACTS COMMON TO ALL COUNTS

5. On October 29, 2015 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. No trustee, examiner or committee of unsecured creditors has as yet been appointed, and the Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Debtor's sole asset is its unequivocal right (the "Purchase Right") to purchase the properties known as 178 Richmond Terrace (Block 13, Lot 82), 170-172 Richmond Terrace (Block 13, Lot 92), 8 Stuyvesant Place (Block 13, Lot 100), 18 Stuyvesant Place (Block 13, Lot 103), and 20-26 Stuyvesant Place (a/k/a 27-33 Hamilton Avenue) (Block 13, Lot 104), Staten Island, New York (collectively, the "Mortgage A Property") and the properties known as 180-194 Richmond Terrace (Block 13, Lots 75, 78, 79-81), Staten Island, New York (collectively, the "Mortgage B Property" and with the Mortgage A Property, the "Properties") pursuant to a Contract of Sale and certain amendments thereto entered into between the Debtor and WF. The Debtor's Purchase Right became fixed upon the July 2015 foreclosure sale of the Properties to WF, who then became obligated to sell the Properties to the Debtor.

7. LTR and its affiliate LTR I are currently debtors in Chapter 11 cases pending in this Court, Case Nos. 14-45187 (ESS) and 14-45189 (ESS).

8. LTR and LTR I owned the Properties prior to their filing voluntary chapter 11 petitions which cases were commenced on or about October 15, 2014.

9. WF is the holder of two separate mortgages on the Properties. The first mortgage ("Mortgage A") encumbers the Mortgage A Property. The second mortgage ("Mortgage B") encumbers the Mortgage B Property.

10. The guarantors of the loans made to LTR and LTR I are Yehuda Lieb Puretz and Tirza Puretz (together, the "Guarantors").

11. The Mortgage A Property is the subject of a foreclosure action now titled *WF Liberty LLC v. Liberty Towers Realty LLC, et al.*, Index No. 130138/09 (Sup. Ct. Richmond County) (Minardo, J.) (the "Mortgage A Foreclosure Action").

12. The Mortgage B Property is the subject of a foreclosure action now titled *WF Liberty LLC v. Liberty Towers Realty LLC, et al.*, Index No. 130517/2010 (the "Mortgage B Foreclosure Action").

13. The Mortgage A Foreclosure Action and the Mortgage B Foreclosure Action are referred to collectively herein as the "Foreclosure Actions."

14. WF obtained a Judgment of Foreclosure and Sale (the "Mortgage A Judgment") in the Mortgage A Foreclosure Action on January 24, 2011.

15. The Mortgage A Judgment stated that the amount owed under Mortgage A as of March 26, 2010 was $15,560,348.12, plus interest, costs and other charges.

16. Upon information and belief, WF also obtained a Judgment of Foreclosure and Sale (the "Mortgage B Judgment") in the Mortgage B Foreclosure Action on July 7, 2014. Upon information and belief, the Mortgage B Judgment stated that the amount owed under Mortgage B as of October 31, 2013 was $6,364,199.50, plus interest, costs and other charges.

17. On November 21, 2013, Richmond entered into a Contract of Sale (the "Contract of Sale") to purchase the Properties from WF.

18. The purchase price for the Properties under the Contract of Sale is $8.5 million.

19. The Contract of Sale provides for a down payment of $400,000 upon execution.

20. Debtor made the required down payment of $400,000.00 and has fulfilled all of its other obligations under the Contract of Sale.

21. The Contract of Sale (as amended on April 1, 2015) provides that the closing thereunder shall take place "on the later of (i) twenty (20) days after the

Property is sold at a foreclosure sale and Seller (or its affiliate) is the sole purchaser, or (ii) the date that the referee's deeds shall be delivered for the Property."

22. Paragraph 14(b) of the Contract of Sale provides that: (i) WF is the holder of both Mortgage A (which encumbers the Mortgage A Property) and Mortgage B (which encumbers the Mortgage B Property); (ii) Mortgage A is the subject of the Mortgage A Foreclosure Action; and (iii) Mortgage B is the subject of the Mortgage B Foreclosure Action.

23. Paragraph 14(b) of the Contract of Sale requires WF to "use its best efforts to diligently prosecute the Foreclosure Actions to completion or until such time as Seller shall have received deeds in lieu of such Foreclosure Actions."

24. Paragraph 14(d) of the Contract of Sale further requires WF to use "diligent good faith efforts to obtain title to the [Properties]," so that WF can then convey the Properties to Debtor.

25. Under the Amendment to the Contract of Sale, WF agreed that it "shall not accept any amount necessary to satisfy the obligations owed to [WF] other than the full amount to which it is entitled on the date of payment under the [mortgages for the Properties]."

26. Debtor is ready, willing and able to close under the Contract of Sale.

27. During the pendency of the LTR and LTR I bankruptcy cases, WF sought and obtained stay relief in order to proceed with the Foreclosure Actions.

28. The foreclosure sales in both the Mortgage A Foreclosure Action and the Mortgage B Foreclosure Action took place on July 16, 2015.

29. WF was the winning bidder at both foreclosure sales and purchased the Properties at the foreclosure sales.

30. On July 24, 2015, after the foreclosure sale occurred (but before the referee's deed was delivered to WF), LTR and the Guarantors brought a motion in the Mortgage A Foreclosure Action seeking to vacate the foreclosure sale and to be given an opportunity to redeem the Mortgage A Property.

31. In addition to seeking a belated right to redeem, LTR and the Guarantors also asked the court in the Mortgage A Foreclosure Action to erase the approximately $7.5 million in interest that had accrued since March 26, 2010.

32. As a matter of law, the foreclosure sale extinguished all of LTR and LTR I's legal and equitable interests in the Properties, including the right to redeem. However, LTR obtained an order impermissibly resurrecting the redemption right with respect to the Mortgage A Property when, on September 3, 2015, the court in the Mortgage A Foreclosure Action issued an order giving LTR an opportunity to redeem the Mortgage A Property by making a payment of $12.5 million within 21 days, upon which the foreclosure sale would be vacated.

33. On September 25, 2015, the court in the Mortgage A Foreclosure Action amended the September 3, 2015 order (hereinafter, with the September 3, 2015 order, the "Redemption Orders") by further extending LTR's time to redeem until October 13, 2015.

34. In addition, the Redemption Orders, without explanation, also permitted LTR to redeem Mortgage A for millions of dollars less than what is owed under the applicable judgment. WF failed to meaningfully attempt to stop LTR from obtaining or exercising this unlawful redemption right.

35. Among other things, WF failed to argue in the state court that the LTR's right to redeem was extinguished as a matter of law by the foreclosure sale. WF also

failed to move to reargue the state court's order providing the unlawful right to redeem, to file notices of appeal from that order, to prosecute the appeals or to seek to stay the orders pending appeal.

36. Further, despite repeated requests, WF failed and refused to inform Richmond whether LTR tendered $12.5 million in electronic funds to WF on or before October 13, 2015, in accordance with the Redemption Orders.

37. By virtue of these and other failures, WF has breached its obligation under the Contract of Sale to use diligent good faith efforts to obtain title to the Properties, so that WF could then convey the Properties to Debtor.

38. Under its Contract of Sale with Debtor, WF agreed to sell <u>all</u> of the Properties to Debtor for $8.5 million. However, under the state court's unlawful order, WF could receive $12.5 million from LTR to redeem the mortgage that applies to only Mortgage Property A. Thus, as a result of the Redemption Orders, WF could enjoy an improper windfall at the expense of Debtor's bargained-for Purchase Right.

39. The Mortgage A Foreclosure Action has been removed from the Supreme court to the District Court and should be referred to the Bankruptcy Court shortly.

40. As a result of WF's breaches of the Contract of Sale, on or about October 15, 2015, Debtor filed an action in the Supreme Court of the State of New York, County of New York seeking specific performance of the Contract of Sale and related relief (the "<u>Specific Performance Action</u>"). The Specific Performance Action has been removed from the Supreme court to the District Court and should be referred to the Bankruptcy Court shortly.

41. In connection with an emergency motion filed by Debtor in the Specific Performance Action, as well as LTR's opposition to a motion filed by Debtor in the

Appellate Division, Second Department, Debtor learned that LTR purported to redeem the mortgage through a transfer of certain properties (<u>not</u> the mortgaged properties) to WF from a separate entity (<u>not</u> from LTR).  This purported redemption did not comply with the terms of the Redemption Orders because, among other reasons, LTR did not tender $12.5 million in electronic funds to WF on or before October 13, 2015.  Moreover, as LTR is a debtor in possession, to the extent LTR borrowed monies or property valued at $12.5 million to effectuate the redemption, such borrowing should have been presented to the Bankruptcy Court for approval.

42. WF has failed and refused to provide Debtor with any additional information or documents relating to the purported redemption of the mortgage.  This is true even though the Court in the Specific Performance Action ordered WF to turn over such documents and information to Debtor.  Instead of complying, WF improperly attempted to avoid the Court's order.

43. In fact, rather than comply with the order directing WF to turn over documents and information to Debtor, WF filed a new action in the Supreme Court of the State of New York, County of Richmond which is completely duplicative of the Specific Performance Action (the "<u>Duplicative Action</u>"), seeking a declaratory judgment relating to whether it is required to specifically perform under the Contract of Sale – precisely the issue raised by the Specific Performance Action filed by Debtor.  WF also improperly sought to consolidate the Specific Performance Action with the Duplicative Action in Richmond County, even though the Specific Performance Action was the first-filed case.  The Duplicative Action has been removed from the Supreme court to the District Court and should be referred to the Bankruptcy Court shortly.

44. WF named the LTR debtor as a defendant in the Duplicative Action, even though this violated the automatic stay arising from LTR's own bankruptcy case.

45. As noted, under the Contract of Sale, WF was required to use diligent and good faith efforts to prosecute both Foreclosure Actions to completion, and to obtain title to the Properties.

46. WF breached the Contract of Sale by, among other things, failing to use diligent and good faith efforts to oppose LTR's redemption application in the Mortgage A Foreclosure Action.

47. Among other failures, WF failed to present the strongest argument in opposition to the LTR motion: that LTR had no right to redeem after the foreclosure sale in the Mortgage A Foreclosure Action had taken place.

48. In addition, neither WF nor LTR informed the court in the Mortgage A Foreclosure Action of WF's Contract of Sale with Debtor.

49. Debtor has contended that the Redemption Orders are wrong because, among other reasons, LTR had no right to redeem the Properties after the foreclosure sales occurred.

50. Moreover, the Redemption Orders do not explain why LTR can pay over $3 million less than the $15,560,348.12 that was set forth in the Mortgage A Judgment back in January 2011 (before most of the interest had accrued). Indeed, the Redemption Orders deduct every penny of interest that accrued over the years.

51. To date, WF has not brought a motion for leave to reargue with respect to the Redemption Orders.

52. To date, WF has not filed notices of appeal of the Redemption Orders, or sought a stay of the orders pending appeal.

53. On October 2, 2015, Debtor presented an emergency motion in the Mortgage A Foreclosure Action seeking to vacate the Redemption Orders.

54. WF's counsel was provided with advance notice of the time and place that the application would be presented.

55. WF was obligated under the Contract to appear in court at that time and support Debtor's application when it was presented, but WF failed to do so.

56. Debtor's counsel then sent WF's counsel a letter dated October 2, 2015 reminding WF's counsel that it was required to "take all available steps to comply with [WF's] obligations under the [Contract of Sale].  This includes, without limitation, submitting papers in support of [Debtor's] order to show cause and working diligently to convince the Court that its Order was contrary to law and should be vacated."

57. That letter also advised WF of the time and place when the court had scheduled oral argument on Debtor's emergency application, and advised WF that it must appear through counsel at the hearing and support Debtor's application.  Further, the letter instructed WF to advise the court in writing as soon as possible that it joins Debtor's application in all respects and believes that the Redemption Orders were entered in error.

58. Thereafter, despite numerous letters and emails to WF's counsel that reiterated WF's obligations under the Contract of Sale and demanded that WF comply with those obligations, WF never took any steps in support of Debtor's emergency motion to vacate or overturn the Redemption Orders.

59. Due to WF's continued refusal to comply with and its obvious breach of its obligations under the Contract, Debtor requires this Court's authority to file notices of appeal of the Redemption Orders on behalf of and instead of WF in order to preserve its

rights to the Properties. This is particularly urgent as the Debtor is not party to the Mortgage A Foreclosure Action and is therefore not being served with, is unaware of, and unable to determine from the State court file or otherwise confirm if, notice of entry of the Redemption Orders has been served. Such notice would trigger the time within which notices of appeal must be filed. Therefore, immediate relief is required to permit the Debtor to file the notices of appeal on behalf of and instead of WF, in order to pursue the appeals and preserve its rights to the Properties.

60. It is clear to the Debtor that WF's reason for not seeking to challenge the Redemption Orders is that pursuant to the Redemption Orders, WF could receive $12.5 million for the redemption of the Mortgage A Property alone. That is four million dollars more than the amount WF would receive from Debtor for **all** of the Properties pursuant to the Contract of Sale.

61. Thus, WF is attempting to undermine Debtor's rights under the Contract of Sale so that WF can benefit to the tune of millions of dollars.

62. Regardless of WF's motive, its failure to act is improper and a breach of its obligations under the Contract of Sale.

63. Further, WF's failure to act is causing significant prejudice to Debtor and directly impacting its rights to the Properties.

64. On October 8, 2015, the court in the Mortgage A Foreclosure Action issued an order (the "<u>October 8, 2015 Order</u>") which denied Debtor's emergency motion in all respects. The October 8, 2015 Order did not state any reasons for denying the motion.

65. Debtor has appealed both the Redemption Orders and the October 8, 2015 Order to New York's Appellate Division, Second Department.

66. LTR purports to have redeemed the Mortgage A Property through a transfer of certain properties (<u>not</u> the Properties) to WF from a separate entity (<u>not</u> from LTR). This purported redemption did not comply with the terms of the Redemption Orders, as amended, because, among other reasons, LTR did not tender $12.5 million in electronic funds to WF on or before October 13, 2015. Moreover, LTR failed to obtain bankruptcy court approval of this purported redemption.

67. Nonetheless, it appears that WF failed to reject the redemption. Further, WF refuses to disclose any additional documents or information to Debtor related to the purported redemption.

68. As a direct result of this purported unlawful redemption, Richmond has been prejudiced and its property rights potentially extinguished. Accordingly, Richmond has filed its bankruptcy petition to protect its valuable Purchase Right and now seeks an immediate TRO for authority from this Court to file notices of appeal of the Redemption Orders on behalf of and instead of WF, a preliminary injunction allowing the Debtor to prosecute the appeals of the Redemption Orders until final adjudication on behalf of and instead of WF, and stay relief, to the extent necessary or applicable in order for Richmond to obtain the relief requested as it affects LTR.

**COUNT I**
**(Specific Performance of Contract)**

69. The Contract of Sale is a valid and binding contract.

70. Richmond has duly and timely performed all of its obligations under the Contract of Sale.

71. Richmond is ready, willing and able to close on the purchase of the Properties.

72. WF has breached the Contract of Sale by, among other things, failing and/or refusing to timely close on the purchase of the Properties.

73. WF has also breached the Contract of Sale by, among other things, failing to use diligent, good faith efforts to prosecute the Foreclosure Actions to completion; obtain title to the Properties; challenge the Redemption Orders and the October 8, 2015 Order; and convey the Properties to Richmond.

74. As a direct and proximate result of the foregoing, Richmond has suffered harm.

75. Richmond has no adequate remedy at law.

76. Richmond seeks and is entitled to a judgment from the Court (1) directing WF to specifically perform its obligations under the Contract of Sale by, among other things: (a) promptly informing Richmond in writing of any and all developments in the Foreclosure Actions and providing to Richmond all documentation relating in any way to the Foreclosure Actions; (b) timely closing under the Contract of Sale, including by timely delivering to Richmond the deeds to the Properties and all other documents necessary to complete the closing, and otherwise performing under the Contract of Sale; and (c) if LTR and/or the Guarantors purportedly tendered a payment to WF to redeem Mortgage A, or sought and obtained an extension of the redemption period (i) directing WF to immediately reject such purported redemption payment; (ii) ordering WF, or any other authorized party, to file and serve notices of appeal of the Redemption Orders within the time period mandated by the CPLR; (iii) ordering WF, or any other authorized party, to promptly and timely perfect the appeals of the Redemption Orders; (iv) directing WF, or any other authorized party, to take all other steps and to make any other motions or applications necessary to stay or vacate the Redemption Orders and/or

to vacate and oppose the implementation of the Redemption Orders or any extension of the redemption period beyond October 13, 2015; (v) directing WF to obtain the deeds to the Properties; and (vi) directing WF to convey title to the Properties to Richmond and otherwise fulfilling WF's obligations under the Contract of Sale; and (2) awarding Richmond all damages incidental to such relief, including, without limitation, Richmond's reasonable attorney's fees, costs and expenses.

**WHEREFORE,** Debtor requests judgment be entered on the first cause of action for an Order: (1) directing WF to specifically perform its obligations under the Contract of Sale by, among other things:  (a) promptly informing Richmond in writing of any and all developments in the Foreclosure Actions and providing to Richmond all documentation relating in any way to the Foreclosure Actions; (b) timely closing under the Contract of Sale, including by timely delivering to Richmond the deeds to the Properties and all other documents necessary to complete the closing, and otherwise performing under the Contract of Sale; and (c) if LTR and/or the Guarantors purportedly tendered a payment to WF to redeem Mortgage A, or sought and obtained an extension of the redemption period (i) directing WF to immediately reject such purported redemption payment; (ii) ordering WF, or any other authorized party, to file and serve notices of appeal of the Redemption Orders within the time period mandated by the CPLR;  (iii) ordering WF, or any other authorized party, to promptly and timely perfect the appeals of the Redemption Orders; (iv) directing WF, or any other authorized party, to take all other steps and to make any other motions or applications necessary to stay or vacate the Redemption Orders and/or to vacate and oppose the implementation of the Redemption Orders or any extension of the redemption period beyond October 13, 2015; (v) directing WF to obtain the deeds to the Properties; and (vi)

directing WF to convey title to the Properties to Richmond and otherwise fulfilling WF's obligations under the Contract of Sale; and (2) awarding Richmond all damages incidental to such relief, including, without limitation, Richmond's reasonable attorney's fees, costs and expenses; and (3) granting Richmond such other and further relief as the Court may deem just and proper.

**Dated:**  New York, New York
November 20, 2015                    **ROBINSON BROG LEINWAND**
                                      **GREENE GENOVESE & GLUCK P.C.**
Proposed Attorneys for the Debtor
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  212-603-6300

By:  /s/ A. Mitchell Greene
     **A. Mitchell Greene**