UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
IN RE:                          .    Case Nos. 1-14-45187-ESS,
                                .              1-14-45189-ESS
LIBERTY TOWERS REALTY           .
LLC, and LIBERTY                .
TOWERS REALTY I, LLC,           .
                                .
          DEBTORS.              .
. . . . . . . . . . . . .
LIBERTY TOWERS REALTY           .    Adv. Nos. 1-15-01065-ESS,
LLC,                            .              1-15-01066-ESS
          PLAINTIFF,            .
                                .
              v.                .
                                .
RICHMOND LIBERTY, LLC,          .
                                .
          DEFENDANT.            .
. . . . . . . . . . . . .
IN RE:                          .    Case No. 1-14-44866-ESS
                                .
RICHMOND LIBERTY, LLC,          .
                                .
          DEBTORS.              .
. . . . . . . . . . . . .
RICHMOND LIBERTY, LLC,          .    Adv. Nos. 1-15-01191-ESS
                                .              1-16-01014-ESS
          PLAINTIFF,            .
                                .
              v.                .
                                .
WF LIBERTY, LLC, ET AL.,.
                                .
          DEFENDANTS.           .
. . . . . . . . . . . . .
WF LIBERTY, LLC,                .    Adv. Nos. 1-15-01197-ESS
                                .              1-15-01198-ESS
          PLAINTIFF,            .
                                .
              v.                .    271-C Cadman Plaza East
                                .    Brooklyn NY 11201-1800
LIBERTY TOWERS REALTY           .
LLC, ET AL.,                    .    October 14, 2016
                                .    2:35 p.m.
          DEFENDANTS.           .
. . . . . . . . . . . . .
```

BEFORE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY COURT JUDGE


Audio Operator:              Juliet Lecky

TRANSCRIPT OF ADJOURNED STATUS CONFERENCE; ADJOURNED PRE-TRIAL
CONFERENCE; ADJOURNED MOTION TO COMPROMISE CONTROVERSY;
ADJOURNED MOTION TO DISMISS CASE

APPEARANCES:

| | |
|---|---|
| For Liberty Towers Realty, LLC: | The Carlebach Law Group<br>By:  DAVID CARLEBACH, ESQ.<br>55 Broadway, Suite 1902<br>New York, NY 10006 |
| For Richmond Liberty LLC: | Robinson Brog<br>By:  LORI A. SCHWARTZ, ESQ.<br>875 Third Avenue, 9th Floor<br>New York, NY  10022 |
| | Westerman Ball Ederer Miller Zucker<br> & Sharfstein, LLP<br>By:  JEFFREY MILLER, ESQ.<br>1201 RXR Plaza<br>Uniondale, NY  11556 |
| For WF Liberty, LLC: | Backenroth Frankel & Krinsky<br>By:  ABRAHAM BACKENROTH, ESQ.<br>800 Third Avenue, 11th Floor<br>New York, NY  10022 |
| For U.S. Trustee's Office for the EDNY: | Department of Justice<br>By:  NAZAR KHODOROVSKY, ESQ.<br>201 Varick Street, Suite 1006<br>New York, NY 10014 |
| For the Guarantors Lieb and Tirza Puritz: | Law Offices of John Z. Marangos<br>By:  JOHN Z. MARANGOS, ESQ.<br>1134A Hylan Boulevard<br>Staten Island, NY  10305 |
| For NCC Capital, LLC: | Bohensky & Associates<br>By:  JAY BOHENSKY, ESQ.<br>2115 Avenue O<br>Brooklyn, NY  11210 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**
**(609) 586-2311  Fax No. (609) 587-3599**

**WWW.JJCOURT.COM**

1          COURTROOM DEPUTY:  Numbers 5 through 26, all matters

2     regarding Liberty Towers Realty LLC and Liberty Towers Realty

3     I, and Richmond Liberty, LLC.

4          THE COURT:  All right.  Good afternoon.  I'm clearing

5     a little space, as you can hear from the call of the calendar

6     there are a number of matters on and, therefore, a number of

7     files on the bench.  Let me get your appearances on the record,

8     please?  Thank you so much.

9          MS. SCHWARTZ:  Good afternoon, Judge, Lori Schwartz,

10    Robinson Brog for Richmond Liberty.

11         THE COURT:  Okay.  Thank you so much.

12         MR. CARLEBACH:  David Carlebach, Liberty Towers

13    Realty, LLC and Liberty Towers Realty I, LLC, representing the

14    debtor.

15         THE COURT:  All right.  So we have all three of our

16    debtors represented?

17         MR. MILLER:  Yes, Your Honor.  Jeffrey Miller from

18    Westerman Ball, also for Richmond Liberty.

19         THE COURT:  All right.  Thank you very much.

20         MR. BACKENROTH:  Abraham Backenroth for the secured

21    creditor.

22         THE COURT:  Which secured creditor, please?

23         MR. BACKENROTH:  I forget the name of --

24         UNIDENTIFIED ATTORNEY:  WF Liberty.

25         MR. BACKENROTH:  WF Liberty.

1          THE COURT:  WF, Yes.  Thank you.

2          MR. KHODOROVSKY:  Nazar Khodorovsky for the U.S.

3   Trustee.  May it please the Court.

4          THE COURT:  Thank you very much.

5          MR. BOHENSKY:  Jay Bohensky, counsel to NCC Capital,

6   LLC, Secured Creditor in the Liberty Towers Realty, LLC and

7   Liberty Towers Realty I, LLC cases.

8          THE COURT:  Thank you.  Yes.

9          MR. MARANGOS:  John Z. Marangos for the guarantors

10  Lieb and Tirza Puritz.

11         THE COURT:  Thank you, glad you're here.  All right.

12  Thank you, everybody.  I'd like to begin with status in our

13  Chapter 11 cases.  Let's take them they're in the order they're

14  on the calendar.  Mr. Carlebach, Liberty Towers Realty status,

15  how are we doing?

16         MR. CARLEBACH:  I believe we are up to date on our

17  U.S. Trustee obligations.  I will make that subjection to Mr.

18  Khodorovsky's.  I know that the Court had given some

19  directives, which I believe we complied with in terms of

20  getting all our MORs current on both cases and spent a fair

21  amount of time with Mr. Speigel (phonetic) making sure that was

22  all done.

23         THE COURT:  Good.

24         MR. CARLEBACH:  So my belief is that we are current

25  on all our Chapter 11 requirements, under the guidelines of

1  United States Trustee.

2          THE COURT:  That's both for Liberty Towers Realty and

3  Liberty Towers Realty I?

4          MR. CARLEBACH:  Correct.

5          THE COURT:  All right.  Mr. Khodorovsky?

6          MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

7  the U.S. Trustee.  That is actually not current with it's

8  operating reports.  The August operation report was not filed.

9          THE COURT:  I only see through July.

10          MR. KHODOROVSKY:  And also, Your Honor had asked that

11  on the 29th of August, the hearing on the 29th of August, Your

12  Honor, had asked that the Liberty Towers, Liberty Towers I,

13  debtors come current with their quarterly fees and that has not

14  happened.

15          THE COURT:  Yes.

16          MR. KHODOROVSKY:  Staying just with the Liberty

17  Towers Realty case, Liberty Towers Realty has not paid any U.S.

18  Trustee quarterly fees, since June of 2015 and currently owes

19  close to $2,000 in U.S. Trustee quarterly fees.

20          THE COURT:  Mr. Carlebach, I see that the operating

21  report for July does indicate that the debtor's current.  It's

22  not the largest dollar amount, but it is a large issue at this

23  point.  It's a persistent --

24          MR. CARLEBACH:  It's frustrating to me because my

25  client keeps telling me that he sends a check out and I think

1  I've even seen copies of checks and some reason it doesn't -- I

2  don't know why that is not, you know, found its way into the

3  bank, the coffers of the United States Trustee's Office, but --

4          THE COURT:  Well, this isn't -- this is like a year

5  now.  That's a long --

6          MR. KHODOROVSKY:  Your Honor, staying just with the

7  Liberty Towers Realty, LLC case, there have been no payments

8  for about a year and a half.  It -- just none.  There have been

9  payments made in the other case.

10         THE COURT:  Maybe it's a --

11         MR. KHODOROVSKY:  More recently in Liberty Towers

12 Realty I, by more recently I mean in March.  There have been

13 none since March of this year.  That's for Liberty Towers

14 Realty I.

15         THE COURT:  Liberty Towers Realty?

16         MR. KHODOROVSKY:  Realty I.  In Liberty Towers Realty

17 there have been none for a year and a half.  In Liberty Towers

18 Realty there have been none for six months -- I'm sorry,

19 Liberty Towers Realty I there have been none for six months.

20         THE COURT:  Mr. Carlebach, is the principal of your

21 client here in court?

22         MR. CARLEBACH:  He's out of the country, Judge,

23 today.

24         THE COURT:  All right.  Would some sort of coercive

25 sanction cause this to happen?  I share your frustration.

1          MR. CARLEBACH:  I'm extremely frustrated because I

2   have had conversations with him and I don't want to violate

3   attorney client privilege --

4          THE COURT:  Of course not.

5          MR. CARLEBACH:  -- but, you know, it's -- there's no

6   reason why we should even having this discussion right now, so

7   I -- I --

8          THE COURT:  I agree.  I appreciate your position on

9   this and also your frustration.  I'll give the debtor a week

10  until October 21st to become current on U.S.T. fees and to file

11  a letter confirming that those -- when will the next quarter be

12  due?

13         MR. KHODOROVSKY:  The next quarterly fees, Your

14  Honor, for the third quarter of 2016, they will be due on the

15  31st of October.

16         THE COURT:  All right.  So by the 21st, we're still

17  just looking at the first two quarters?

18         MR. KHODOROVSKY:  Yes.

19         THE COURT:  So if you could file a letter confirming

20  that these are current by October 22nd, 2016, that way you and

21  your client know that needs to be done, we'll have it ion the

22  docket.  I think that should help everyone actually.

23         MR. KHODOROVSKY:  And, Your Honor, what about the

24  operating report?

25         THE COURT:  We need that -- one more you need to get

1  on file.  We're looking for August.  We have through July, but

2  I don't see August.  Let's have that, also, by the 21st, I'd

3  like to see both August and September, so that you're current

4  on that as well.  All right.

5          MR. KHODOROVSKY:  And, Your Honor, would that apply

6  to both Liberty Towers and Liberty Towers Realty I, or just

7  Liberty --

8          THE COURT:  We'll get there.  It has been helpful in

9  the past to take these one at a time.  But, yes.  The answer is

10 yes, it will when we get there.

11         MR. KHODOROVSKY:  Thank you, Your Honor.

12         THE COURT:  All right.  Mr. Carlebach, is there

13 anything else that's helpful for the Court to know?

14         MR. CARLEBACH:  I would just ask if I could trouble

15 Mr. Khodorovsky to just send me an e-mail with the exact amount

16 of the fees that are owed?

17         THE COURT:  I think that would be a good idea.

18         MR. KHODOROVSKY:  Your Honor, I actually have the

19 statements with me right now.  I can just given them to him

20 right now.

21         MR. CARLEBACH:  That would be excellent.

22         MR. KHODOROVSKY:  If I could pass them down, I

23 brought them with me.

24         THE COURT:  Thank you very much.  So turning -- would

25 anyone else like to be heard with respect to the status in

1  Liberty Towers Realty, LLC?

2          MR. KHODOROVSKY:  Nothing further from the U.S.

3  Trustee.

4          THE COURT:  All right.   No response.  Let's move to

5  status in Liberty Towers Realty I.   Number 10 on today's

6  calendar.   Mr. Carlebach, I think there's some of the same

7  concerns?

8          MR. CARLEBACH:  I believe we complied with the order

9  in terms of bringing the operating reports current, compliant

10  with your order at the last hearing, but we may be, we may be

11  one or two short in terms of just the general requirements of

12  bringing them -- I think we've got everything filed through

13  July.  I don't have the docket in front of me on the one --

14          THE COURT:  I'm looking for it myself.

15          MR. KHODOROVSKY:  Your Honor, the --

16          THE COURT:  Just one second.  All right.  Let's take

17  a look.

18          MR. KHODOROVSKY:  Your Honor, the operating report,

19  in regards to the operating reports in the Liberty Towers

20  Realty I case, the debtor has filed through July, but there's

21  an issue with the July report, Your Honor, in that it's, I'm

22  sorry -- it's of limited usefulness.  By that I mean, is that

23  the July report in the Liberty Towers Realty I case consists of

24  four pages of the same page.  It's the first page of the

25  report, just done four times.

1          THE COURT:  The July report?

2          MR. KHODOROVSKY:  Yes, Your Honor.  Docket Number --

3          THE COURT:  Docket Number 100?

4          MR. KHODOROVSKY:  One hundred fifteen in the Liberty

5  Towers --

6          THE COURT:  Fourteen dash four, five, one, eight,

7  nine?

8          MR. KHODOROVSKY:  I, actually, I'm sorry, Your Honor,

9  it's in 15-45187.  I'm sorry, the -- that report actually has

10 pieces of the Liberty Towers Realty I report and the Liberty

11 Towers Realty report.  So I'm, I mean, the reports have been

12 filed, but it is confusing.  Liberty Towers Realty I has filed

13 full report --

14         THE COURT:  For July.

15         MR. KHODOROVSKY:  For July, Docket Number 100.

16         THE COURT:  Yes.

17         MR. KHODOROVSKY:  Which there is an issue I would

18 like to raise about.

19         THE COURT:  Okay.

20         MR. KHODOROVSKY:  Specifically, Your Honor, on the

21 next to last page of the report, on the balance sheet --

22         THE COURT:  Yes.

23         MR. KHODOROVSKY:  It discusses an advance from the

24 principal.  It's not a large amount, Your Honor.  It's $1,225.

25 It also reflects you have the present balance for the principal

1  and U.S. Trustee fees elicit as on paid current liabilities.

2          THE COURT:  All right.

3          MR. KHODOROVSKY:  And, also, there's accrual of fees

4  to accountants and counsel.  It does not say whether these,

5  these look like they're being accrued.

6          THE COURT:  Seems to me that scheduling them is

7  accrued, as opposed to seeking their approval or seeking the

8  ability to pay them may be somewhat different, but, Mr.

9  Carlebach --

10         MR. KHODOROVSKY:  I just wanted to know that for Your

11 Honor there is an advance --

12         MR. CARLEBACH:  I think the accrual is actually an

13 appropriate way to deal with administrative fees that have not

14 been approved.  But it's just a more accurate ray recording the

15 liabilities, because if you don't accrue them, then there's

16 actually a liability accruing that's undisclosed and --

17         THE COURT:  I see that point.

18         MR. CARLEBACH:  -- which can pop up at any point and

19 create, you know, the balance sheet that's inherent in every

20 operating report should reflect all liabilities and that's, I

21 know that's the practice of the EisnerAmper Firm and to me it

22 makes sense --

23         THE COURT:  So I see they carried small'ish advance

24 from the principal as of 6/30 and also 7/31 of $1,225.  Is that

25 from some period deep in the past of this case?  It was as of

1  June, as of July.  Just sometime to clarify, I think.  Of

2  course if the principal is putting money into the debtor and

3  it's in the nature of a loan, that would be something we would

4  need to be more concerned about --

5        MR. CARLEBACH:  It's not --

6        THE COURT:  -- just something to followup on, I

7  think.

8        MR. CARLEBACH:  And once again, I think that it's

9  more of a disclosure than anything else and I'm not --

10  certainly there's been no application to this court for any

11  kind of, you know -- and I'm  not opining whether it would be

12  appropriate, but there's no -- I don't think it's characterized

13  as a loan.  It's simply an advance --

14        THE COURT:  It goes back to at least the March report

15  on the balance sheet accrual basis of the debtor.  It also

16  happens to correspond to the dollar, to the balance in the DIP

17  account.

18        MR. CARLEBACH:  I mean, I would believe those

19  advances would be made to pay the U.S. Trustee fees and I'm not

20  sure why there isn't a disbursement.  That's what I'm trying to

21  figure out.  Like, why isn't there a disbursement of those

22  funds to the U.S. Trustee and that --

23        THE COURT:  So speaking of --

24        MR. CARLEBACH:  Yeah.

25        THE COURT:  -- I'm sorry.  Speaking of those fees, it

1  seemed to be appropriate here as well, to provide a planned

2  consent, although, I'm prepared to direct the debtor in the

3  absence of consent that the debtor will become current on

4  U.S.T. fees and on the operating reports by October 21st, 2016

5  at avoidance of doubt, to file a letter confirming that fees

6  are current by October 22nd, 2016.  May I make that same

7  direction here as well?

8           MR. CARLEBACH:  Yes.

9           THE COURT:  That's if we've -- but now have other

10  things to think about in this case.  Let's get this part taken

11  care of.  Staying with status and Liberty Towers Realty I,

12  would anyone else like to be heard?  No response.

13           Ms. Schwartz, let's move to status in your client's

14  Chapter 11 case.

15           MS. SCHWARTZ:  Thank you, Judge.  In the Richmond

16  Liberty case, the debtor is current with the filing of its

17  operating reports through September.  I don't believe they've

18  received an invoice yet for the third quarter fees, which Mr.

19  Khodorovsky just said would be due at the end of the month.

20  That will be a minimum fee.  There's been no disbursements and

21  we'll arrange for that to be paid, as soon as the invoice is

22  received.

23           MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

24  the U.S. Trustee.  The, in the Richmond Liberty case the debtor

25  is current through September with both operating, with its

1  operating reports and no quarterly fees are yet due for the

2  third quarter that is current otherwise.  Thank you, Your

3  Honor.

4          THE COURT:  All right.  Anything to add?  No

5  response.  Okay.  There are a number of motions on the Court's

6  calendar.  So Court had been spending a considerable amount of

7  time addressed to the settlement here.  I want quickly to

8  review the calendar to see if there is anything separate from

9  the various motions to compromise controversy.  For example,

10  Number 6 on today's calender, pretrial conferences, motion to

11  dismiss of the Feuerstein, followed by Mr. Feuerstein in an

12  adversary proceeding.  The motion to compromise, the motion to

13  compromise, the motion to dismiss again.  I don't think there's

14  any reason to expect to proceed today on the motion to dismiss.

15  It's a motion to remand or abstain, motion to compromise.  All

16  right.  So there's no case management loose ends here.  It's

17  not in the nature of these cases that there would likely be

18  such matters, as I understand that the real issue here is

19  whether and to what extent the settlement, first, is a

20  settlement and, second, to be approved.  I'd like to hear any

21  update, first, from Ms. Schwartz as the proponent of the

22  settlement.

23          MS. SCHWARTZ:  Judge, update in terms of?

24          THE COURT:  Are there any -- I'm, I'll say at this

25  point, quite familiar with the record, the arguments made by

1  the parties, the questions raised in the record.  I have some

2  questions in my own mind about the best way to proceed.  It had

3  been my intention to be able to give you a decision today and

4  we may well yet get there, but as I have really, really studied

5  the record and the record in the State Court, there is, there

6  remain increasing at least the possibility of some questions in

7  my mind as to whether we have a settlement and whether the

8  question that I need to be addressing first is the

9  enforceability of a settlement and whether there's been any

10 communication or consideration among the parties between our

11 last hearing date and today.

12       I have seen and done my best to study the filings

13 that were made.  I don't think there have been many since our

14 last hearing.  There was one today, mid-day or so, at twelve

15 o'clock, I think, by the lawyer, the lawyer who represents at

16 least in the State Court the Guarantors.  So I have my own

17 questions, but I'd like to hear anything that would be helpful

18 to hear from the parties as to anything that has transpired

19 between now and today.

20       You know, our last hearing included some, I think,

21 theretofore an anticipated developments and whether the Liberty

22 Towers Realty, and Liberty Towers Realty I parties remained

23 proponents of or even parties to the settlements, a settlement

24 that they signed, you know, with counsel.  Likewise, the

25 Guarantors.  So kind of an unusual record.  One of the more

1  complicated 9019s I think I've seen in some time.  Let me hear

2  from you.

3          MS. SCHWARTZ:  Thank you, Judge.  Judge, just in

4  terms of anything that's transpired since the last hearing,

5  there's been no further filings with the Court other than

6  document that was filed this afternoon by Mr. Marangos.

7  There's been no further communications between the parties with

8  respect to the settlements.  What the Court has raised really

9  is the issue that came up at the hearing, first on July 22nd,

10  and then I believe we were here again on August 26th, or at the

11  end of August.  I don't remember the exact date.

12          THE COURT:  Yes.

13          MS. SCHWARTZ:  At that juncture, Mr. Carlebach had

14  said that the debtors, the LTR Debtors, that's called an LTR

15  and LTR-1 had withdrawn there support.

16          THE COURT:  Yes.

17          MS. SCHWARTZ:  And that seems to be based on a few

18  issues, which were raised by NCC, who's here by counsel in

19  their initial objections.  First there was a due process

20  question, which I think has been adequately documented --

21          THE COURT:  Whatever else we can here.  We've

22  certainly had a lot process.

23          MS. SCHWARTZ:  Correct.  And the other issue was this

24  question that keeps coming up with respect to the redemption

25  order, and this dispute and it's obviously very contested

1  between the parties as to whether or not there was a

2  redemption.  But the settlement agreement itself contains

3  representations and I'm referencing Paragraph 6, I believe it's

4  (b) and (c) of the settlement agreement.  Representations both

5  by WF Liberty, the secured creditor, as well as the Guarantors,

6  that there was no redemption.  So any position taken to --

7          THE COURT:  Well, do you think if parties to a

8  settlement agreed that the State of New York borders the

9  Pacific Ocean, that would make it true?  Of course not.

10          MS. SCHWARTZ:  No.

11          THE COURT:  So --

12          MS. SCHWARTZ:  Of the -- the purpose of this --

13          THE COURT:  I take it that they agreed that they are

14  no longer disputing that issue.  That's what I take the

15  provision in the, at a minimum, that's what I would take that

16  provision in the settlement to mean.

17          MS. SCHWARTZ:  That there was no redemption?

18          THE COURT:  Yes.

19          MS. SCHWARTZ:  Correct.  The parties are, WF and the

20  Guarantors are both stating in the settlement agreement signed

21  by the representative WF Liberty and signed by the Guarantors,

22  that there was no redemption.  The objection raised by NCC, and

23  it was followed by Mr. Carlebach on behalf of the LTR Entities

24  is that somehow there was redemption.  But regardless of those

25  positions, they can't now repudiate the settlement agreement.

1    Not only have they failed to establish fraud, collusion,

2    mistake or anything to that effect because the settlement

3    agreement is being presented for purposes of this 9019 motion,

4    the representations that there was no redemption has to stand.

5         THE COURT:  Well, it's a representation and an

6    agreement that was an occasional finder of fact.  I do see a

7    distinction, but I also, I also take the points.  I think it

8    may be that we have evolved to the point that this has not been

9    briefed by anybody of whether there's a dispute over the

10   enforceability or an enforcement of the settlement agreement

11   because that has been put at issue in studying the transcripts,

12   I can see that it was a fairly dynamic hearing and there were

13   times where I'm not sure that I fully understood the arguments

14   that the parties were making.

15        For example, some of the points made about due

16   process and whether there were conflicting representations.  I

17   don't see a question in the record, as I understand it today,

18   as to whether any party had unconflicted lawyers, for example,

19   and that's such an important concern in a bankruptcy process

20   that it was, it was something I needed to be sure I understood

21   and now I do.  I think I now perhaps have a more thorough

22   understanding, as well, of the economic issues that are present

23   here.

24        There's been an argument made that the, by the

25   opponents, by NCC, the record opponent of the settlement,

second lien lender with respect to the Mortgage (a) and

Mortgage (b) properties that, in effect, this is a 363 sale.  I

think actually that argument is pretty well rebutted by the

proponents of the settlement by your client Richmond Liberty,

for all the reasons set forth in the papers and for reasons

that at some point I may spread upon the record.  I don't

really see this as a disguised 363 sale, but a question is, in

my mind, as to whether, whatever the consequences would be of

this, whether we still have a settlement, if some of the

parties to the settlement say no we don't, we changed our

minds.  Maybe that's breach of contract.  Maybe that gives rise

to a whole new set of claims.

        And then there is in the background, as you say, the

question of whether and to what extent there was a redemption,

an issue the parties vehemently disagree upon.  I don't see

evidence, I don't see persuasive evidence in the record before

me that the terms of the redemption order were met.  I simply

don't see it and I assume it might have been put in the record,

but I also don't see that that issue is today before me to

decide.  I think the issue before me today, is whether to

approve the settlement.

        An assumption built into that motion is whether there

is a settlement.  I want you to you assume, again,

hypothetically, and I'll try to do better than New York and the

Pacific Ocean, the -- imagine a situation where a party came to

1  the court and said, that's not my signature, I've never heard

2  of this settlement, it's a fraud.  Now that argument is not

3  being made here.  The argument being made seems to be more in

4  substance.  The bankruptcy court should be about getting the

5  best results for all the creditors and we've got a better

6  result now.

7          I also don't see any evidence of the better result.

8  No plan has been filed, no evidence of a $16 million offer is

9  before the Court.  Promises were made, they were not kept -- or

10 I shouldn't say promises.  It's too big a word, but statements

11 were made with respect to the plan that was going to be filed.

12 I don't believe any plan has been filed and we have been paying

13 enormous attention, as we do in every case, to the docket in

14 this case.

15         So those are some of the things I am thinking about.

16 It is a -- we have some time this afternoon.  We don't have

17 unlimited time this afternoon and I want to use your time as

18 well as I can.  But I think that includes setting out as

19 plainly as I can, the questions that I am focusing on and the

20 questions that I acknowledge, but that I do not see to be

21 before me.  So I'm going to give you a couple minutes to think

22 about how it might make sense best to proceed today.  I'm going

23 to do the same.

24         I thought it was possible, there might be something

25 new to hear from you that I hadn't seen in the docket and I

1  appreciate that there isn't, but knowing that, I'd like to take

2  a short break and give you all a short break, so that when we

3  come back perhaps I can ask you to be prepared specifically to

4  address this question.  Whether the oral statement on the

5  record in our prior hearing -- reflected in the transcript

6  filed on August 1st --

7                    (Court/clerk discussion)

8         THE COURT:  July 27th, 26th, 22nd, sorry, that Mr.

9  Carlebach said, yes, they are withdrawing their support from

10 the settlement and whether that's an issue that that the Court

11 needs to be concerned with or not.  I would be prepared to hear

12 you on the record.  I would consider a chambers conference, if

13 it makes sense.  I'll be the ultimately who decides that, but

14 I'll be very interested in the views of the parties as well,

15 and I'll be back in just a few minutes or as many minutes more

16 than a few, as I understand from a courtroom deputy makes

17 sense.  I assume we have at least another or so?

18        MR. CARLEBACH:  That's fair.

19        THE COURT:  Okay.  Thank you -- fair.  Fair is good.

20             (Court spoke on another matter)

21        THE COURT:  All right.  Thank you so much.

22        MR. KHODOROVSKY:  Thank you, Your Honor.

23        COURTROOM DEPUTY:  All rise.

24                    (Recess)

25        THE COURT:  All right.  Ms. Schwartz, it's your

1  motion.  One of your many motions, but it's your motion.  Let

2  me hear from you.

3          MS. SCHWARTZ:  Thank you, Judge.  Judge, in

4  responding to the questions posed by the Court before --

5          THE COURT:  Yes.

6          MS. SCHWARTZ:  -- Your Honor took a brief recess -- I

7  just want to start by saying that this settlement really came

8  as a result of the Court ordered mediation that the parties

9  participated in and while the mediation itself was not

10 successful, it did precipitate lengthy negotiations between the

11 parties, resulting in the signed settlement agreement, which

12 was signed by the representatives individually of Richmond

13 Liberty, of Liberty Towers Realty and Liberty Towers Realty I,

14 by the Guarantors and by WF Liberty, each in their

15 representative capacity.

16         The settlement agreement, Richmond submits, meets the

17 9019 standards.  It's actually well above the lowest level of

18 reasonableness.  The Richmond Liberty Debtor agreed to increase

19 the purchase price of the property by two million dollars.

20         THE COURT:  What was the auction price?

21         MS. SCHWARTZ:  The WF Liberty bid in its lien.  I

22 don't know the --

23         THE COURT:  I'm sorry, what was the contract price?

24         MS. SCHWARTZ:  The contract price was eight and a

25 half million.

1          THE COURT:  All right.  All right.  Please proceed.

2   And then the sale price contemplated in the settlement is ten

3   point five or ten?

4          MS. SCHWARTZ:  I believe it was ten and a half

5   million, Judge.

6          MR. KHODOROVSKY:  Ten and a half.

7          THE COURT:  That's what I recall.

8          MS. SCHWARTZ:  And the settlement provides for a, I'm

9   going to say a carve out, for lack of better expression, of

10  $100,000 to be distributed to the Liberty Towers Liberty Towers

11  Realty I --

12         THE COURT:  Set aside from the ten point five or in

13  additional 100?

14         MS. SCHWARTZ:  No.  Inclusive of the ten five.  So

15  that's carved out from the ten five and that's money that would

16  otherwise be unavailable in the Liberty Towers cases.

17         THE COURT:  Well, of course, I'm not proposing fully

18  to go into those issues because we do have the question of

19  whether there is an now an enforceable settlement agreement, if

20  there is an enforceable agreement, if it's been breached.  If I

21  find that I then can't approve it, but we have the prosecutor

22  double breach of contract or a tortious interferences contract

23  or whatever kind of claim might come from that difficult

24  situation.  But I appreciate the value described in the

25  settlement.  I appreciate that the NCC, who's objecting, stated

1  among other things that there would be filed, though there has

2  not been filed a plan that would contemplate a purchase price,

3  for what, I'm not sure because the properties are in title.  I

4  assume still LTR, LTR-1, but there's an equitable ownership

5  interest arguably at least of the foreclosing creditor and a

6  contract right to purchase of your client, so we have a lot of

7  bundles, a lot of sticks in the bundle of stick of ownership

8  here.  But I'm not asking you to reargue the  motion.

9         Is there anything further from your perspective that

10 would be helpful for the Court to hear?

11        MS. SCHWARTZ:  A few items, Judge.  And I'm not that

12 familiar with State Court foreclosure matters.  That might be

13 something that Mr. Miller can address.

14        THE COURT:  Okay.

15        MS. SCHWARTZ:  But at the, once the gavel went down

16 at the foreclosure sale, I believe title transfers to the

17 (indiscernible).  Certainly equitable transfers the successful

18 bidder.

19        THE COURT:  Right.  But legal title I assume,

20 transfers at closing?

21        UNIDENTIFIED ATTORNEY:  Yes.

22        THE COURT:  Which has not occurred.

23        MS. SCHWARTZ:  That's correct.

24        UNIDENTIFIED ATTORNEY:  That's right.

25        THE COURT:  Okay, so legal title is still in LTR and

1  LTR-1, isn't that right?  Nominal legal title.

2         MR. MILLER:  Record title.

3         THE COURT:  Record title.  Thank you.  I knew there

4  was and adjective that I needed.  I'm sorry.  It's Friday

5  afternoon.  Record title, LTR, LTR-1, equitable title, WF,

6  contract right to purchase, Richmond Liberty.

7         MS. SCHWARTZ:  That's correct.

8         THE COURT:  Like I'm passing a test here.  Thank you.

9                        (Laughter)

10         MS. SCHWARTZ:  Judge, to address the redemption

11  issue, so to speak, not only does the settlement agreement

12  contain a representation that there was no redemption, but it

13  also contains a factual statement at 6(b), that WF did not

14  accept a tender of real property and or member interests as

15  part of a redemption of Mortgage (a), and or Mortgage (b).  And

16  I think that's an important distinction that --

17         THE COURT:  Isn't it pretty clear what the redemption

18  order required?

19         MS. SCHWARTZ:  Yeah.  And that's exactly the point.

20  The redemption order required transfer of money be electronic

21  funds by a date certain.

22         THE COURT:  And a sum certain, 12.5 million, is that

23  right?

24         MS. SCHWARTZ:  Correct.  It goes --

25         THE COURT:  I mean, I don't see a shred of evidence

1  in the record that that occurred.

2          MS. SCHWARTZ:   That's correct.

3          THE COURT:  And I suspect at least a shred would have

4  been provided if it had.

5          MS. SCHWARTZ:  And we agree with a position, Judge.

6  So with respect to this claim of redemption by transfer of deed

7  or membership interest as a place holder, it doesn't comply

8  with the redemption order.

9          THE COURT:  It seems to me that the record even

10 suggests that it might have been by somebody accepted and I

11 think it probably is the case that, were there an agreement to

12 accept some alternative form of performance, then that would be

13 an agreement, but --

14         MS. SCHWARTZ:  That's correct, but it's not.

15         THE COURT:  -- but it seems a little unilateral the

16 way it's been described so far, but again, not a matter I've

17 held an evidentiary hearing on.  I used the record before me

18 and it's extensive, but it's, you know, it is what it is.  I'm

19 sure there are gaps, so.

20         MS. SCHWARTZ:  Judge, with respect to the parties

21 repudiating, we had noted in our papers and set forth on the

22 record that the parties can't simply repudiate on this basis

23 that there's some purported higher offer for the property,

24 setting aside the terms of that offer, briefly, you know,

25 there's no, it's not legally sufficient to say there's a higher

1    offer out there.  There has to be some evidence of fraud,

2    collusion, mistake, duress or something.

3          THE COURT:  At this point, there isn't even evidence

4    of a firm higher offer.

5          MS. SCHWARTZ:  And that's exactly right, Judge.

6          THE COURT:  But I do have a statement of counsel on

7    the record that the, they are withdrawing their support from

8    the settlement Lines 23 and 24, Page 28 of the transcript.

9    It's Document 98 on the record.

10          MS. SCHWARTZ:  I don't think that they can withdraw

11    their support, Judge.  They haven't evidenced their ability to

12    show legally sufficient basis to repudiate the agreement that

13    they signed.

14          THE COURT:  I think it also does provide that a

15    modification needs to be in writing, not orally.

16          MS. SCHWARTZ:  Correct.

17          THE COURT:  These are matters of serious concern, at

18    the same time when the party says, we withdraw our support from

19    the settlement, you know, if I approve the settlement over that

20    stated ostensible withdraw of support, you know, what happens

21    next?  What are the considerations with respect to settlement

22    approval is whether it brings an end to litigation and it seems

23    to me, we just might be starting the next round with a whole

24    new set of issues.  I'm concerned about that.

25          MR. MILLER:  Could I just make one point.  I'm sorry,

1  Your Honor.  I might have interrupted you, but just at one

2  point to address that.  I don't think there's any doubt that

3  the signed settlement agreement cannot be repudiated.  And it

4  can't withdraw from because they've signed it.  There are

5  delineated grounds if they want to say that they no longer have

6  to follow it, which would be some type of fraud or collusion.

7  There's no allegation.  Obviously it didn't exist, but they're

8  not even alleging that.  That's a different issue than them

9  coming in and trying to say the settlement isn't reasonable.  I

10 mean, they can make whatever they want.

11          THE COURT:  I understand the difference and as I --

12          MR. MILLER:  Yeah, no --

13          THE COURT:  -- as I tried to indicate and probably

14 didn't do it as cloy as I could have, I appreciate the issues

15 under 9019 and the Court's job in assessing the settlement, but

16 when the record includes a, in effect, a breach of contract, if

17 it's an enforceable contract, a breach, because I don't yet

18 hear the argument.  Mr. Carlebach, I'll give you a moment to

19 confer.

20          When the record includes the statement that parties

21 withdraw their support, maybe that's a breach of contract.

22 Maybe that's the next lawsuit we'll have to hear, but it's

23 something I have to take, I have to at least pay some attention

24 to and whether there are legally cognizable grounds for that,

25 you know, we may get to the point where I'm going to have to

1  ask you to brief that and I'll need to see your, I'll need to

2  see something more than just, gosh, we think we might get a

3  little more money out of a different deal, because I think

4  everyone ought to agree, that's not a basis.

5        MR. MILLER:  Right.  I would just, right, I would

6  just leave you with two points, Your Honor.  They could come in

7  and they could, through counsel, verbally say that they want to

8  back away from the agreement, but if --

9        THE COURT:  And there will be consequences.  I mean,

10 it's, could be expensive.

11       MR. MILLER:  Well, but no, because this isn't, this

12 isn't a supply contract where it would make it back away and

13 there will be monetary damages.  This is a settlement of all

14 the stuff that's been going on that they signed onto and

15 they're bound to it and you're entitled to enforce their

16 agreement.  Now there are --

17       THE COURT:  That would be, as that motion is not

18 before me.

19       MR. MILLER:  Well, that's what I'm saying.  They

20 haven't made a motion to strike the agreement to say that it

21 shouldn't be enforceable to lay out a ground that there's

22 fraud, to lay out a ground that there's collusion.  To set

23 forth a factual basis to put it in front of you.  All that's

24 before you today is our motion where they all have signed it to

25 enforce the agreement.  It's clearly fair and reasonable.  Our

1  clients are paying two million dollars more than they're

2  required to pay and to, you know, to verbally say you back away

3  isn't a delineated ground.  They've had months to make a

4  motion, months, before today, to make a motion before you, to

5  lay out one of these grounds and they haven't done it.  And

6  then also to say, well, you can get a better --

7            THE COURT:  Believe me, I know.

8            MR. MILLER:  And then, just the last thing I'll say,

9  is to just say you can get a better price, I would say,

10  respectfully, that's almost an irrelevant suggestion because

11  the state of the record is that there is a settlement title --

12  our clients have a contractual right and obligation to buy this

13  property.  This isn't like you said before, a 363 sale, where

14  it's a higher and better bid.  We are the only ones who have

15  the right to buy the property because that's the -- those are

16  the state of the facts before the Court in the record.

17            Now they could come in and say, the fact that we have

18  to pay two million dollars more, 25 percent more than the price

19  we agreed to, just to settle everything isn't reasonable.  They

20  could try to make that argument, although, they haven't made

21  that argument.  But to say someone else may pay more for the

22  property, the time for them to pay more was to go bid at the

23  foreclosure sale.  The whole world is on notice of it.  They

24  could have went and bid, just like everyone else and so, you

25  know, that flip the law in New York to say that they have,

1    someone would have a second opportunity to come in to bid at

2    that foreclosure sale, so I just wanted to address those two

3    points.  Thank you.

4              THE COURT:  All right.  Mr. Backenroth?

5              MR. BACKENROTH:  Yes.  I think that the, first of

6    all, I know of no basis, I don't know if Your Honor wants to

7    brief it, but certainly, they haven't raised it, where a party

8    enters into a settlement, can repudiate it and it's simply a

9    damage claim.

10             THE COURT:  Well, there are grounds, but the grounds

11   are very hard to meet.

12             MR. BACKENROTH:  Right.  Exactly.  And memorable in

13   this case.

14             THE COURT:  And in, on, I would say five or less

15   occasions I've ruled on such motions in 13 years.  They're not

16   common.

17             MR. BACKENROTH:  And I -- no, no.  If it's very

18   extraordinary circumstances where someone comes in, Your Honor,

19   and poses extreme case, it wasn't my signature fraud, this is

20   the type of thing that comes sometimes before the Court to

21   repudiate a settlement.  But after you signed the settlement,

22   come to court and says, well, I just repudiated and therefore

23   it's nothing.  Let's start another round of litigation

24   concerning breach of damages claim.  I don't think that there

25   is any basis in the law for that.  And they haven't argued

1    that.  They haven't filed any papers to authorize that.  In

2    fact, I think Your Honor had given them an opportunity to

3    further brief any issues that were on the table and one of the

4    issues was their supposed repudiation.

5         THE COURT:  I don't recall sending a schedule, but

6    I'll double check that, but you can set a schedule usually for

7    both parties to file briefs.

8         MR. BACKENROTH:  Your Honor, and it was briefed on

9    our side by debtor's counsel that standard law that you've

10   required fraud misrepresentation, et cetera in order to

11   repudiate a settlement.  None of that is over here.  In

12   addition to the fact that there is no alternative which to

13   consider.  There's been no plan filed, no money filed, zero

14   and, in fact, their proposal involved the sale of properties

15   they're not even subject to all of this activity, so you have

16   that as a problem.  But finally, I think what you have as a

17   problem is that they come in over here and Your Honor doesn't

18   try the facts.  But based on the lay of the land, the court

19   order would have allowed this in, quote, repudiation required a

20   wire transfer which --

21        THE COURT:  By repudiation, do you redemption?

22        MR. BACKENROTH:  Redemption.  Excuse me.  Doesn't

23   happen, doesn't happen.

24        THE COURT:  No, we don't need knew issues.

25         MR. BACKENROTH:  The only thing, the only thing that

1  actually happened in State Court is that we moved for

2  declaratory determination in State Court, whether or not we

3  have to accept such a thing, but we've never acknowledged that

4  we accepted the tender and that was the clean title and, in

5  fact, all the parties agreed that there was no acceptance.

6  There was further litigation on that question.  No court has

7  ever determined that there was a proper tender and Your Honor,

8  now has that in front of her in determining the settlement.  In

9  determining the reasonableness of the settlement.

10        As it lies, Your Honor, doesn't have to decide

11  whether or not there was or wasn't, but based upon the facts

12  that exist.  They have a very, very tenuous case.  So you now

13  weigh that against a settlement that has been proposed, and

14  negotiated by the parties and I think that the settlement is

15  adequately reasonable.  I don't think there's any basis in the

16  law for repudiation of -- except from the limited

17  circumstances, none of which are involved in this case and I

18  think, Your Honor, should approve the settlement.

19        THE COURT:  All right.  Anything further from the

20  proponents of the settlement?  All right.  Mr. Carlebach, let

21  me hear from you.

22        MR. CARLEBACH:  The first instance Mr. Miller's

23  suggestion that there has to be a pleading file --

24        THE COURT:  Not a pleading, a brief.

25        MR. CARLEBACH:  Brief, well I have filed briefs.

1  I'll address that.  I absolutely cited to the case law, cited

2  the decision on the Filene's Basement case where the Court

3  absolutely ruled, there was a higher and better offer, the

4  Court shouldn't approve the settlement.

5        THE COURT:  I reviewed those cases --

6        MR. CARLEBACH:  Yeah.

7        THE COURT:  -- and I'm not persuaded by them.

8        MR. CARLEBACH:  I think they're absolutely

9  dispositive.  It just --

10        THE COURT:  Respectively disagree.  They're not

11  controlling, Mr. Carlebach.  You don't mean absolutely

12  dispositive.

13        MR. CARLEBACH:  They may not be, they may not be

14  controlling, but I think we just have to think about, we've all

15  been practicing bankruptcy law for quite some time and in

16  bankruptcy court the notion of something being subject to

17  higher and better offers and as many settlements, you'll have a

18  settlement of litigation where people buy positions and the

19  question of is there somebody out there who is willing to pay

20  more money, which will give more money to creditors.  The

21  notion, the key, the way this came to court, is because Mr.

22  Feuerstein, who filed a notice of appearance for NC Capital

23  also represented Richmond Liberty, which was an egregious

24  conflict.  There was no notice of the settlement.  The part of

25  the --

1          THE COURT:  Do you question the quality of the

2   representation of NCC Capital at this point?  I don't.

3          MR. CARLEBACH:  Well, not today.

4          THE COURT:  Thank you.

5          MR. CARLEBACH:  But the point is, that when the

6   settlement was being -- NC Capital, effectively, the counsel

7   for Richmond was the same counsel for NC Capital and of course

8   you can't serve two masters and they figured that their bread

9   was buttered with Richmond and so NC Capital doesn't get any

10  notice.  The debtor, thinking that NC Capital is represented by

11  counsel, we'll fil the notice of appearance and they come at

12  the court and say, what about us.  We'll pay more money.  And

13  that is as compelling a reason as any to repudiate a

14  settlement.

15         THE COURT:  Mr. Carlebach, in July 19, 2016 there was

16  filed with the Court a statement that NCC will shortly be

17  filing a plan which will pay all creditors, including the first

18  and second mortgage in full, and which will value the property

19  in excess of $16 million.  That has not happened.

20         MR. CARLEBACH:  Perhaps, perhaps, well what NC

21  Capital did do was file a contract.  They filed -- they put

22  $500,000, which is still in my account and the only reason they

23  didn't file a plan, to file a plan before --

24         THE COURT:  They can speak for themselves, Mr.

25  Carlebach.  They're well represented.

1        MR. CARLEBACH:  Okay.  Well, what I would say is the

2   reason we didn't file a plan is because our, clearly a

3   feasibility issue until we get a ruling on this thing.  So

4   maybe was a little hyperbole, but the point is there's money --

5   the statement that there's no money, there's no funds, is

6   absolutely untrue.  They filed papers showing the reason why I

7   have to say this is because I represent the debtors.  We have a

8   fiduciary obligation to creditors, to interest holders, to the

9   estate.

10        If, you know, the debt -- it's a debtor's business

11   judgment whether or not a settlement makes sense and --

12        THE COURT:  And the task for the Court is distinctly

13   different on a sale subject to higher and better offers and on

14   settlement approval.  That standard is not in the code, it's

15   not in the rules and it's not in cases of which I'm aware.

16   It's not to say that the overall bankruptcy purpose of

17   maximizing value to creditors is, including equity, is a piece

18   of the picture and whether I can approve a contract that is

19   being breached is a different kind of question.  That's what I

20   find to be the most challenging question on this record, what

21   the consequences would be of that, of that breach is a

22   concerning question to me because I would like to have less,

23   not more litigation for these parties.  I'm very concerned

24   about the extraordinarily lengthy litigation path that has been

25   traveled here.

1          I see real benefits, it seems to me, for a number of

2     the parties here.  Some, I'll say modest financial return for

3     creditors, benefits for Guarantors, I think, are the Guarantors

4     with least of personal liability and this settlement that's

5     before the court, that in a situation where the judgment amount

6     exceeds if you add them together, I think $20 million.  Isn't

7     that right?  That's a lot of money.

8          MR. CARLEBACH:  The judgment amount was reduced to

9     twelve and a half million dollars and the contract, they had

10    obligations --

11         THE COURT:  The judgment amount or the redemption

12    number, Mr. Carlebach?  Let's be precise.

13         MR. CARLEBACH:  Well, they have obligations to the

14    second mortgage --

15         THE COURT:  Mr. Carlebach, do you dispute that the

16    judgments are -- add up to the number that's in the range I

17    referenced?

18         MR. CARLEBACH:  I don't know whether or not, after

19    the Court, I just simply don't know, after the Court --

20         THE COURT:  Okay.  Well, if you don't know, you don't

21    need to take time speculating.

22         MR. CARLEBACH:  -- reduced to 12.5 whether or not the

23    Guarantors are obligated.  The Court, as it was almost as a

24    sanction, reduced to judgment amount of 12.5 the redemption

25    amount, I think, is a fair argument to be made that that's the

1  extent of the guarantee.  Once the Court had --

2         THE COURT:  Well, I -- that's an interesting argument

3  and it's not before me today, but I'm not familiar with case

4  law that would support it.

5         MR. CARLEBACH:  But, I -- well, what has to be taken

6  into account is that the Guarantors are also personal to the

7  second mortgagee as well.  It's got a four million dollar claim

8  --

9         THE COURT:  And they're not released from that.

10        MR. CARLEBACH:  -- and that's why the significance --

11        THE COURT:  I know.  I understand your point.

12        MR.  CARLEBACH:  The significance of -- exactly, they

13  get, in their view, they get -- and that's why their

14  counselor's here today.

15        THE COURT:  But, Mr. Carlebach, they signed the

16  settlement.

17        MR. CARLEBACH:  I understand, but they didn't --

18        THE COURT:  That's a problem.

19        MR. CARLEBACH:  -- they didn't have counsel and the

20  affidavit of service, you know, Ms. Schwartz --

21        THE COURT:  It's not an affidavit of service, it's an

22  affidavit.

23        MR. CARLEBACH:  -- Ms. Schwartz has characterized the

24  settlement as coming out of the mediation.  She's agreed that

25  it didn't take place during the mediation, but said that it was

1  somehow a byproduct of -- I'm -- it's unclear to me whether

2  that is or isn't the case.  So I will say this, it was a State

3  Court attorney Mr. Mermel (phonetic) who actually represented

4  the debtor in State Court, who participated in the mediation.

5  Mr. Marangos represented the Guarantors in State Court.

6  Neither one of those State Court attorneys is on the affidavit

7  of service of the settlement.  You would think at least Mr.

8  Mermel, who participated in the mediation would have gotten

9  service.  The notion that both State Court attorneys didn't get

10 service of the settlement and didn't know about it, I think, I

11 think is very telling.

12         MS. SCHWARTZ:  I just have to interrupt that Mr.

13 Mermel --

14         MR. CARLEBACH:  I would --

15         MS. SCHWARTZ:  -- is on the affidavit of service and

16 I was not personally at the mediation, but other parties were

17 and I was advised that Mr. Mermel was there in his capacity as

18 counsel for the Guarantors.

19         MR. BACKENROTH:  Certainly was.

20         THE COURT:  And was he, is he on the certificate of

21 service?

22         MS. SCHWARTZ:  And he's on the service.

23         THE COURT:  As a courtesy, could you show Mr.

24 Carlebach?

25         MS. SCHWARTZ:  Of course.

1          THE COURT:  I'd ask the same courtesy in the other

2    direction.  Let's just make sure we're making arguments that

3    are consistent with the record.  So there we are.

4          MR. CARLEBACH:  I may have missed him.  Apparently,

5    he's the last, close to the last one on here.

6          THE COURT:  I imagine it's a fairly long certificate

7    of service.

8          MR. CARLEBACH:  Yes.  I perused it this morning

9    because of Mr. Marangos' entry into the case, I was curious

10   whether or not he had been notified.  I didn't see his name --

11         THE COURT:  It's a good thing to check and I'm glad

12   you did and it's good to confirm it.  It's about --

13         MR. CARLEBACH:  Yeah, I mean, and --

14         THE COURT:  I'm happy to have one less issue, Mr.

15   Carlebach.

16         MR. CARLEBACH:  Yeah.  He, you know, Mr. Mermel, if

17   you look in the State Court in Richmond County, it's clear Mr.

18   Mermel represented the debtors, Mr. Marangos represented the

19   Guarantors and a right of redemption was given to the

20   Guarantors and/or the debtor.  It's clear in Judge Minardo's

21   order.  So what I'm saying is that I agree with Your Honor.

22   There is a standard of 363, per se and 9019 are different

23   standards, but I think that what I am, what I was getting at is

24   exactly what Your Honor said, which was the overall bankruptcy

25   purpose of getting the most, the most benefit out of an estate

1  to the most people, and the most parties in interest, clearly

2  is in keeping with the bankruptcy purpose and from the debtor's

3  point of view, is a good enough reason for us to withdraw the

4  settlement.  I don't need to file a brief to withdraw my

5  support for a motion.  I can stand here occasionally --

6          THE COURT:  It's not your support for the motion;

7  it's the settlement itself.

8          MR. CARLEBACH:  We are ---

9          THE COURT:  That's a concern.

10          MR. CARLEBACH:  -- there is a --

11          THE COURT:  If the debtor is, if the debtor's Liberty

12  Towers Realty and Liberty Towers Realty I intend to repudiate,

13  to breach the settlement contract which they signed --

14          MR. CARLEBACH:  We've done that.  We've repudiate --

15          THE COURT:  Then I need to see that briefed I think.

16  The schedule -- the issues I proposed, the steps I proposed to

17  the parties in this challenging context are as follows.  I

18  would be prepared to hold with the parties, though I think this

19  is probably a waste of time, a settlement conference.  I don't

20  want to waste your time.  A referral back to mediation, an

21  accelerated briefing schedule and the question of the breach of

22  the settlement agreement or whether you repudiated on some

23  legally cognizable ground and I don't even hear you suggesting

24  that yet.  But, you know, I'll give you a week to brief it or

25  the appropriate amount of time and then I'll, I think I may

1  well have to decide two issues if you want to make a motion to

2  find the settlement unenforceable or something like that.

3  Otherwise I have a facially valid settlement before me to be

4  measured by the yardstick of Rule 9019.  And it's hard to see

5  on the record before me how it doesn't pass that test.

6          MR. CARLEBACH:  Well, I mean it --

7          THE COURT:  So those are the alternatives I see;

8  settlement conference, that's me, with your clients; mediation,

9  that's with your clients -- go back there; briefing schedule --

10 if we have the contract, we have, or not, I'll let you take

11 your best shot.  You tell me why -- don't tell me that there's

12 -- well, tell me what you wish, but I suspect it would not be

13 persuasive to say, gosh, we wish we had a better deal, or

14 somebody said there would be a better deal --

15         MR. CARLEBACH:  No.  I mean it --

16         THE COURT:  -- out there -- is prepared to buy these

17 rights for more money.  As remember of course what we're

18 selling here is not as -- it's not the usual situation where a

19 debtor owns a piece of property and maybe there's a secured

20 creditor and it's being sold.  This is much more complicated

21 than that, as you know better than I.  So that, those are the

22 alternatives as I see them and I have tried as hard as I can to

23 see in as many ways as possible, the best path forward here,

24 including my original goal of approving or not approving your

25 settlement today.  But I am just concerned that there is a

1  sufficient question in the record.  Everyone speaks once before

2  anyone speaks twice as to whether the parties either believe

3  there is a legal basis to find this unenforceable or are

4  prepared to breach it and pay the consequences.  Now that's --

5      MR. CARLEBACH:  I'm prepared to breached that, Your

6  Honor.  I think there's an absolute basis to -- but I just

7  wanted to -- one other issue --

8      THE COURT:  Well be careful what you say, Mr.

9  Carlebach.

10      MR. CARLEBACH:  What?  Excuse me?

11      THE COURT:  I said be careful what you say.  It's not

12  your agreement, it's your client's agreement.  But I'll give

13  you -- please continue.  Thank you.

14      MR. CARLEBACH:  Yeah.  I just wanted just to conclude

15  the question of a plan, if Your Honor doesn't consider it

16  premature, in other words, I would like to buttress our

17  position is that there is a real offer out there and like I

18  said, I've been hesitant to file a plan only because of the

19  litigation that's ongoing.  But if there's any question about

20  the reality, if that's an evidentiary question, I'm happy to

21  put a plan on file with --

22      THE COURT:  The question before the Court appears to

23  be whether there is a settlement agreement or whether there is

24  a breach, whether there's any basis to find that the two

25  parties that you represent, that signed it may now withdraw

1  from it.  That seems to be the question before the Court.

2  We're not having a 363 sale in the settlement agreement.  I'm

3  not looking for higher and better offers in the settlement

4  agreement.

5          MR. CARLEBACH:  Understood.

6          THE COURT:  You have raised the question.  You did it

7  months, weeks ago at least, almost months ago and that's at the

8  risk of -- well, I'll say not at the risk of desiring to focus

9  this discussion a bit.  That's the question that I see.  I need

10  promptly to move ahead, to approve or not approve this

11  settlement.  But when the question has been raised, is it an

12  agreement, I think that question has to be answered first, so.

13          Anything further?

14          MR. CARLEBACH:  Not at this time, Your Honor.

15          THE COURT:  All right.  Thank you.  Let me hear next

16  from Mr. Bohensky?

17          MR. BOHENSKY:  Thank you, Your Honor.

18          THE COURT:  Thank you.  Just proceed.

19          MR. BOHENSKY:  We support the debtor's right to back

20  out of this contract.  I'm sorry --

21          THE COURT:  What is the right to back out of a

22  contract?

23          MR. BOHENSKY:  Well, again --

24          THE COURT:  I mean, we all know a contract is the

25  right performance or damages for the breach thereof.  I think

1  we learned that in law school, but --

2          MR. BOHENSKY:  We also learned about condition

3  precedent.  Everything a debtor does is subject to the

4  approval, the oversight, the absolute authority given by the

5  Court itself and to some lesser degree to the creditors who

6  move the case along.  As far as this debtor's concerned,

7  imagine if a debtor would walk into a settlement agreement and

8  give away the entire store without approval or oversight,

9  permission of a Court.

10          THE COURT:  But that's why settlements are subject to

11  approval.  If what you're suggesting was the rule settlements

12  could never occur in bankruptcy cases --

13          MR. BOHENSKY:  Certainly that's --

14          THE COURT:  -- because any time a debtor made a

15  commitment, had a second thought, they could say, well, gosh,

16  Judge, I'm counting on you to bail me out.  That system does

17  not work that way, nor could it.

18          MR. BOHENSKY:  It couldn't work any other way without

19  having some sort of underlying presumption that this has to

20  work.  The Court has to be able to have a say whether this made

21  sense --

22          THE COURT:  I agree.

23          MR. BOHENSKY:  -- that everything is subject to the

24  Court.

25          THE COURT:  What I see actually does make some good

1  sense to me.

2          MR. BOHENSKY:  Without even any input at all from the

3  creditors as to whether or not this -- I'm not saying the Court

4  is not considering.  I apologize -- shouldn't have come out

5  that way.

6          THE COURT:  How could you say there's been no input?

7  Look at the record.

8          MR. BOHENSKY:  I'm sorry?

9          THE COURT:  There's been a good deal of input.

10          MR. BOHENSKY:  Correct.

11          THE COURT:  The Court has benefitted from an

12  extensive record and excellent counsel.

13          MR. BOHENSKY:  Notwithstanding, it's certainly

14  subject to the Court's decision to decide --

15          THE COURT:  Correct.

16          MR. BOHENSKY:  -- whether or not the debtor had even

17  the right to make the proposal and once they made the right

18  proposal, again, it's not even, it's not even an offer --

19          THE COURT:  So which debtor --

20          MR. BOHENSKY:  It's not a binding agreement yet.

21          THE COURT:  Well I'm satisfied the debtor, that all

22  of the debtors, and there are three, had the ability to enter

23  into this agreement.  I don't see an issue there.  Whether it

24  meets the 9019 standard is a question before me to decide.

25          MR. BOHENSKY:  So just to clarify, just to make sure

1  I understand, if a debtor signs away everything, then --

2      THE COURT:  Mr. Bohensky, can we agree that it's not

3  my job to answer your questions?

4      MR. BOHENSKY:  I'm just clarifying what the -- Your

5  Honor said before.  That's all.

6      THE COURT:  Thank you so much.  Please proceed.

7      MR. BOHENSKY:  Thank you.  It was --

8      THE COURT:  I can imagine there would be settlements

9  that would not meet the 9019 test.  It's my job to apply that

10 test.

11     MR. BOHENSKY:  That issue was not even raised today

12 and on many of the hearings.

13     THE COURT:  Of course it's raised.  It's on my

14 calendar.

15     MR. BOHENSKY:  The issue about whether or not there

16 was a, there was -- the debtor could back out or not because of

17 whether there was a precondition that it had to be subject to

18 the approval of the Court.  It's in every single agreement that

19 gets put before the Court by a settlement.

20     THE COURT:  Correct.

21     MR. BOHENSKY:  It's subject to the Court's approval.

22     THE COURT:  Yes.  It is.  And I'll do my job.

23     MR. BOHENSKY:  Understood.  But to say that he had no

24 right, that it's breach, and it's a regular contract outside

25 the bankruptcy form where if you're, you gave your word, your

1  word is your bond.  Everybody understands that when you walk

2  into bankruptcy court your word is not -- it's worthless

3  because your word has to be subject to the approval of the

4  Court.

5       THE COURT:  I respectfully disagree that everybody

6  understands that when you walk into bankruptcy court your word

7  is worthless.  And if I did not state my disagreement with that

8  proposition, I would not be doing my job.  Please continue.

9       MR. BOHENSKY:  Thank you, Your Honor.  I was merely

10  making the point.  I was not saying that in every single case

11  it was that way.  But everyone understands that that's the

12  precondition.

13       THE COURT:  Yes.  And I'll do my job and decide

14  whether to approve the settlement.

15       MR. BOHENSKY:  I wasn't even saying that Your Honor

16  wasn't doing her job.  Your Honor is definitely doing her job.

17       THE COURT:  Thank you.

18       MR. BOHENSKY:  We've been back here so many times and

19  Your Honor's been so patient with us and has reviewed all the

20  papers that are voluminous, as Your Honor's mentioned.  That's

21  for certain.

22       THE COURT:  There's an extensive record.  I benefit

23  from an extensive record.

24       MR. BOHENSKY:  Correct.  The question is whether he

25  has the -- the debtor, I'm sorry, has the right to back out.

1  Now as far as the statement that was made on the record and

2  again Your Honor, wished to focus with this hearing with

3  respect to the approval of the settlement, but it was stated on

4  the record.  It just needs to be addressed because Your Honor

5  had mentioned it.  And as far as the plan is concerned, we've

6  done everything short of filing the plan in order to show that

7  we are real and the reason why we haven't filed the plan is

8  because without a ruling on this issue, we face a very serious

9  feasibility issue.  It's premature and if Your Honor on the

10  other hand felt so strongly about it, we certainly would --

11          THE COURT:  I don't have feelings about this matter.

12          MR. BOHENSKY:  Okay.  We would certainly, if Your

13  Honor gave us a schedule by when we'd have to file a plan, we

14  would certainly file one.  We just didn't think, we felt that

15  it would be ostentatious to act as though the Court had already

16  ruled on this matter or -- and decide on our own whether or not

17  we had the right to do this.  Once, once Your Honor has made a

18  ruling on this matter, then we have the right to proceed.  If

19  we were to proceed as though we don't care whatever the Court

20  decided, and we're going to move as though this is an asset of

21  the estate and we can make the plan of reorganization so that

22  we can purchase it, that's -- it's a little bit -- I'm sorry to

23  quote a Yiddish term chutzpadik.

24          THE COURT:  I think you mean presumptuous, not

25  ostentatious.

1          MR. BOHENSKY:  Presumptuous.  I'm sorry.

2   Ostentatious just means something else.  But that's the word

3   I'm looking for.

4          THE COURT:  All right.

5          MR. BOHENSKY:  So, again, we done everything short of

6   it.

7          THE COURT:  Any party may make any filing permitted

8   by the code or rules at any time.  All right, anything further?

9   Your comments have been helpful to the Court.  Thank you very

10  much.

11         MR. BOHENSKY:  I just end off what I just said that

12  we've done everything short -- we've put the money in --

13  500,000, half a million dollars we put into the debtor's

14  attorneys accounts.  We've signed the contract that was filed

15  with the Court in our papers, in the exhibit, for the purchase

16  subject to the approval of the Court.  Our funder is here, who

17  brought his proof of funds again.  It's not a record yet.  It's

18  not -- because Your Honor requires that it be filed.  I

19  understand.  But that would be part of the plan.  That's why

20  it's --

21         THE COURT:  I don't have any special requirements

22  outside of the code and the rules.

23         MR. BOHENSKY:  Chambers' rules I was informed by

24  judges clerk that if you, if there's anything that has to be

25  considered by the Court, it must be filed in advance.

1          THE COURT:  That's certainly a fair statement that I

2     think in a general way, the requirements of due process are

3     then anything to be considered by the Court should be served

4     and filed or in an evidentiary hearing, offered pursuant to the

5     usual practices.  It's not a remarkable thing, I think.  That

6     protects everybody -- respects due process.

7          MR. BOHENSKY:  Thank you, Your Honor.

8          THE COURT:  All right.  Thank you very much.  Who

9     else would like to be heard who has not yet spoken, but stay

10    with counsel, let's stay with counsel, please.

11         MR. MARANGOS:  Judge, the only I would like -- John

12    Marangos, I represent the Guarantors.

13         THE COURT:  Thank you, sir.  Please proceed.

14         MR. MARANGOS:  With all respect, Your Honor, you said

15    there was no evidence as to compliance with the order --

16         THE COURT:  With the electronic transfer of $12.5

17    million.

18         MR. MARANGOS:  Yes.  I just want to say, I want to

19    point out a certain set of facts to Your Honor.

20         THE COURT:  Are there documents in the record you can

21    point me to?

22         MR. MARANGOS:  Judge, I -- well, they were basically

23    in the State Court.  What basically what happened was that they

24    were, Richmond Liberty was rebuked for form shopping and before

25    the judge rendered his actual decision on whether or not there

1  was compliance, they ran here.  So an old rule of law that I'm

2  very well aware of and I think the Court will know is an

3  admission by conduct and what is their conduct?

4         THE COURT:  Is there evidence of -- was there a wire

5  -- is it your position, as an officer of the Court --

6         MR. MARANGOS:  No.  No, Judge.

7         THE COURT:  -- that there was compliance --

8         MR. MARANGOS:  That's not what I said.

9         THE COURT:  -- with the requirement.  Please may I

10 finish?

11        MR. MARANGOS:  Yes, Your Honor.

12        THE COURT:  Thank you, sir.  Goes better that way.

13 Is it, are you stating as an officer of the court that there

14 was compliance with the requirement and the redemption order to

15 transfer by, I believe the phrase is electronic funds, sum of

16 $12.5 million?  Did that occur?  Is it your statement that that

17 occurred?

18        MR. MARANGOS:  What my statement is, is what I've

19 said before and I will say it, again, was that the Judge was

20 going to render a decision whether or not there was substantial

21 compliance this his own order and this was after he had

22 chastised --

23        THE COURT:  But you're not able to represent to the

24 Court that $12.5 million in electronic --

25        MR. MARANGOS:  I'm not going to represent that

1    because that didn't happen.

2              THE COURT:  Okay.  All right.  Thank you.

3              MR. MARANGOS:  But I just wanted to point out that --

4              THE COURT:  For the sake of a clear record, you said

5    I'm not going to represent that because that did not happen.

6              MR. MARANGOS:  That did not happen, Judge.

7              THE COURT:  Okay.

8              MR. MARANGOS:  And what I'm saying is there was

9    substantial compliance.  An order, a determination was going to

10   be rendered by the Court, whose order it was and they then ran

11   to two courts.  They not only ran to Supreme Court New York

12   County --

13             THE COURT:  A lot of courts.

14             MR. MARANGOS:  -- with an attempt to avoid Judge

15   Minardo's decision, and came here.  So, Your Honor, as I --

16             THE COURT:  And I'm sorry, who's the they?

17             MR. MARANGOS:  Richmond Liberty and the people who

18   declared bankruptcy.  We moved the case from Richmond County to

19   here for Your Honor to --

20             THE COURT:  So you're referring to all three of the

21   debtors, Liberty Towers Realty, Liberty Towers Realty I --

22             MR. MARANGOS:  No.

23             UNIDENTIFIED ATTORNEY:  Referring to Richmond

24   Liberty.

25             UNIDENTIFIED ATTORNEY:  Richmond Liberty.

1          THE COURT:  Only to Richmond Liberty, which was the

2  third filed case, was it not?

3          MS. SCHWARTZ:  Correct.

4          THE COURT:  So two other debtors had come or run to

5  use your verb, to bankruptcy first, had they not?

6          MR. MARANGOS:  But we -- they --

7          MR. CARLEBACH:  Judge --

8          THE COURT:  Let's have one counselor at a time,

9  because Mr. Carlebach you had a turn.  Please sit.  Mr.

10  Carlebach please be seated.  Thank you so much.

11          MR. MARANGOS:  Judge, what I'm saying to you was that

12  the State Court was about to render a decision in its own order

13  and who better to determine its own order, but the judge who

14  rendered it?  And what happened was, they then went to another

15  State Court to try and circumvale (sic) that and then they

16  removed it to this court.  And by they, I'm saying Richmond

17  Liberty and that was, that is the tale that I'm telling.

18

19          THE COURT:  Yes.  That's one of the six adversary

20  proceedings, isn't that right?

21          MS. SCHWARTZ:  Correct.

22          THE COURT:  Yes.  Okay.  I'm aware of those facts.

23  I'm aware of those facts.

24          MR. MARANGOS:  All right.  I just wanted to point

25  that out to the Court.  Thank you, Your Honor.

1        THE COURT:  All right.  But it's helpful to have your

2   confirmation with respect to the 12.5 million question, because

3   it was no -- I did not see evidence in the record, but you've

4   clarified that in an unambiguous way and it's helpful.

5        MR. MARANGOS:  Thank you, Judge.

6        THE COURT:  All right.  Everyone I think who had

7   something to say has spoken once.  We're staying with counsel.

8   Sir, you can confer with your lawyer.  I urge you to confer

9   with your lawyer.  The gentleman sitting directly behind.  I

10  can see it, you can't because he's sitting in the public seats.

11       UNIDENTIFIED ATTORNEY:  May we do it while the Judge

12  stays on the bench for a moment --

13       THE COURT:  Yes.  Let's take a moment.  I'm going to

14  step into the hallway to permit conversations in an ordinary

15  voice and then I'll come back and then we'll set a schedule.

16  All right.  Thank you very much.  But thank you for your

17  argument.  Your arguments very helpful.

18       COURTROOM DEPUTY:  All rise.

19                     (Recess)

20       THE COURT:  Again, please be seated, again.  All

21  right.  You've had a brief moment to confer with your clients

22  and each other.  Is there anything that hasn't been said

23  already, that you would like to add to the record?  I see no

24  response.

25       UNIDENTIFIED ATTORNEY:  No, Your Honor.

1          THE COURT:  All right.  Thank you.  Do you see any
2    value in a settlement conference with the Court?  I don't.  Do
3    you see any value in a referral back to mediation?  I have to
4    say, I don't.  You can go there yourself if you wish.  I'm
5    going to ask -- the statement has been -- number of statements
6    were made, but the question was framed, I think by Mr.
7    Bohensky.  The question is whether the debtor has the right --
8    the debtors meaning Liberty Towers Realty and Liberty Towers
9    Realty I have the right to back out of the settlement.  Mr.
10   Carlebach, if you'd like to file a brief on that, I will give
11   you, noting the holiday period, I would say a week.  But I
12   think to give you a week, I should give you two weeks, does
13   that sound right?  October 28th, you'd like to brief that?

14          MR. CARLEBACH:  Yeah, I'd appreciate that, only
15   because we have the holidays in between, so the 28th would be
16   yes.

17          THE COURT:  10/28 served and filed, to be received --
18   I'd like that by noon on the 28th.  And how much time would you
19   like to respond?

20          MS. SCHWARTZ:  Two weeks, Judge.

21          THE COURT:  Makes sense to me, November 4th, November
22   11th, oh, Veteran's Day, Federal Holiday, the 10th or the
23   following Monday?  You can have either one.

24          MS. SCHWARTZ:  I'm sorry, Judge.  I lost track of the
25   date you said.

1          THE COURT:  Here's the situation, two weeks would

2    land on November 11th, which is our Veteran's Day Federal

3    Holiday, which is not an appropriate day as a deadline.  I can

4    push it back to the 10th or push it forward to the 14th.  It's

5    up to you.  The rules would push it forward.

6          MS. SCHWARTZ:  Yes.  The 14th, yes.  Thank you.

7          THE COURT:  The 14th by noon.  I'll be consistent on

8    the noon and then we need a time for a hearing.  Let's see if

9    we can fit it in.

10          MR. CARLEBACH:  Your Honor, could I ask for a brief

11    time to reply, say till the 18th?

12          THE COURT:  All right.  Those are firm dates.  And,

13    again, I want to indicate as clearly as I can, that this is for

14    the limited purpose of briefing in the context of the

15    settlement approval motion.  The question of whether the

16    debtors have the ability to breach or renounce the settlement.

17    It's, I guess a question of whether the settlement should be

18    enforced or not and then we'll have a hearing on that.  Let me

19    see if we can find time during the short holiday week.  It

20    would be tough.  I'm not going to ask you to come in the

21    afternoon of Wednesday the 23rd, although it is an open time in

22    my calendar, might be in yours as well.

23          MR. CARLEBACH:  The following week, you know, seems

24    like a good week, at least on my calendar.

25          THE COURT:  The afternoon of the 28th seems possible

1    for now.

2            MS. SCHWARTZ:  I didn't hear the what date --

3            THE COURT:  The after -- I'm sorry, I'm losing my

4    voice.  The afternoon of the 28th?

5            MS. SCHWARTZ:  I have another hearing on the 28th.

6    I'm not sure what time it is yet.

7            THE COURT:  The morning of the 29th, let's say the

8    morning of the 29th, at least, for now.  I hope we don't have

9    to move it.  If we do, we'll let you know.  All right.

10            MR. CARLEBACH:  What time, what time --

11            THE COURT:  Ten o'clock -- 9:30. I'm sorry.  Let's

12    say 9:30, 9:30 on the 29th.

13            UNIDENTIFIED ATTORNEY:  November 29th at 10 a.m.,

14    Your Honor?

15            MS. SCHWARTZ:  Nine thirty.

16            THE COURT:  I switched it to 9:30.  If we need to

17    adjust that.  We're still putting together the calendar for

18    that week, but I think that works.  We'll do our best to make

19    it work.

20            MR. KHODOROVSKY:  And, Your Honor, may I respectfully

21    request that all the status conferences be carried to the 29th

22    of November?

23            THE COURT:  We'll carry everything on the calendar

24    for that same day.  If you know what you need to do to stay

25    current.  Mr. Carlebach, you've got a couple of compliance

1  things to take care of please.  I'll be grateful that you do it

2  on schedule.

3         MR. CARLEBACH:  We will make every effort to bring

4  that current.

5         THE COURT:  Thank you so much.

6         MS. SCHWARTZ:  We had filed a letter that the Court

7  had so ordered extending all the deadlines through today's

8  date.  Can we --

9         THE COURT:  I think we should do that again.

10         MS. SCHWARTZ:  -- those extended --

11         UNIDENTIFIED ATTORNEY:  We have no problem --

12         MS. SCHWARTZ:  -- with everyone's consent.

13         THE COURT:  Yes.

14         UNIDENTIFIED ATTORNEY:  Yes.

15         MS. SCHWARTZ:  Should we -- is there a need to file a

16  letter, or can we just agree on the record that that's --

17         THE COURT:  I think a letter is probably a clarifying

18  thing.

19         MS. SCHWARTZ:  Okay.  File --

20         THE COURT:  I'll orally so word of the record to that

21  effect, subject to your getting the letter in early next week.

22  I realize it is Friday afternoon and that protects the record

23  and it protects all of you and that's a good thing.  All right.

24  Thank you very much.

25         MS. SCHWARTZ:  Thank you, Judge.

1          UNIDENTIFIED SPEAKERS:  Thank you.

2          COURTROOM DEPUTY:  All rise.

3          UNIDENTIFIED ATTORNEY:  Have a good weekend, Your

4   Honor.

5          THE COURT:  The same.  The same.  And as appropriate,

6   Happy New Year.

7          UNIDENTIFIED ATTORNEYS:  Thank you.

8                        * * * * *

9

**C E R T I F I C A T I O N**

          I, ANNEMARIE DeANGELO, court approved transcriber,

certify that the foregoing is a correct transcript from the

official electronic sound recording of the proceedings in the

above-entitled matter, and to the best of my ability.


/s/ AnneMarie DeAngelo

ANNEMARIE DeANGELO

J&J COURT TRANSCRIBERS, INC.    DATE:    October 18, 2016