UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

_____
                                          )
In re:                                    )
                                          )
LIBERTY TOWERS REALTY LLC      CH: 11      )      1-14-45187-ess
                                          )
[9] ADJOURNED STATUS CONFERENCE           )
     ADJOURNED FROM 12/2/14 1/22/15       )
     2/3/15 3/6/15 5/15/15 6/9/15         )
     7/13/15 8/25/15 9/24/15 12/1/15      )
     12/17/15 2/24/16 4/4/16 5/6/16       )
     6/3/16 7/22/16 8/29/16               )
                                          )
[91] ADJOURNED MOTION TO COMPRISE         )
      CONTROVERSY FILED BY ARNOLD         )
      MITCHELL GREENE ON BEHALF OF        )
      RICHMOND LIBERTY LLC                )
      ADJOURNED FROM: 7/22/16 8/29/16     )
_____   )
                                          )
In re:                                    )
                                          )
LIBERTY TOWERS REALTY LLC      CH: 11      )      1-14-45187-ess
                                          )
LIBERTY TOWERS REALTY LLC v. RICHMOND     )      1-15-01066-ess
LIBERTY LLC                               )
                                          )
[1] ADJOURNED PRE-TRIAL CONFERENCE RE:    )
     COMPLAINT                            )
     ADJOURNED FROM: 7/28/15 9/24/15      )
     10/30/15 12/17/15 2/24/16 4/4/16     )
     5/6/16 7/22/16 8/29/16               )
                                          )
[5] ADJOURNED MOTION TO DISMISS CASE      )
     FILED BY JEROLD C FEUERSTEIN ON      )
     BEHALF OF RICHMOND LIBERTY LLC.      )
     ADJOURNED FROM: 9/24/15 10/30/15     )
     12/17/15 2/24/16 4/4/16 5/6/16       )
     7/22/16 8/29/16                      )
                                          )
[47] ADJOURNED MOTION TO COMPROMISE       )
      CONTROVERSY FILED BY ARNOLD         )
      MITCHELL GREENE ON BEHALF OF        )
      RICHMOND LIBERTY LLC.               )
      ADJOURNED FROM: 7/22/16 8/29/16     )
_____   )

```
_____  )
In re:                                     )
                                           )
LIBERTY TOWERS REALITY I LLC    CH: 11  )      1-14-45189-ess
                                           )
[9] ADJOURNED STATUS CONFERENCE            )
    ADJOURNED FROM: 12/2/14 1/22/15       )
    2/3/15 3/6/15 5/5/15 6/9/15 7/13/15   )
    8/25/15 9/24/15 12/17/15 2/24/16      )
    4/4/16 5/6/16 7/22/16 8/29/16         )
                                           )
[91] ADJOURNED MOTION TO COMPRISE          )
     CONTROVERSY FILED BY ARNOLD          )
     MITCHELL GREENE ON BEHALF OF         )
     RICHMOND LIBERTY LLC                 )
     ADJOURNED FROM: 7/22/16 8/29/16      )
_____  )
                                           )
In re:                                     )
                                           )
LIBERTY TOWERS REALITY I, LLC    CH: 11 )      1-14-45189-ess
                                           )
LIBERTY TOWERS REALTY I, LLC v.            )      1-15-01065-ess
RICHMOND LIBERTY LLC ET AL                 )
                                           )
    ADJOURNED PRE-TRIAL CONFERENCE RE:    )
    [1] COMPLAINT                          )
    ADJOURNED FROM: 10/30/15 2/24/16      )
    4/4/16 5/6/16 7/22/16 8/29/16         )
                                           )
[7] ADJOURNED MOTION TO DISMISS CASE       )
    FILED BY JEROLD C FEUERSTEIN ON       )
    BEHALF OF RICHMOND LIBERTY LLC.       )
    ADJOURNED FROM: 9/24/15 12/17/15      )
    2/24/16 4/4/16 5/6/16 7/22/16         )
    8/29/16                               )
                                           )
[49] ADJOURNED MOTION TO COMPRISE          )
     CONTROVERSY FILED BY ARNOLD          )
     MITCHELL GREENE ON BEHALF OF         )
     RICHMOND LIBERTY LLC                 )
     ADJOURNED FROM: 7/22/16 8/29/16      )
_____  )
```

_____

```
In re:                                    )
                                          )
RICHMOND LIBERTY LLC           CH: 11     )    1-15-44866-ess
                                          )
RICHMOND LIBERTY LLC vs. WF LIBERTY LLC   )    1-15-01191-ess
ET AL                                     )
                                          )
[6] ADJOURNED PRE-TRIAL RE: [1]           )
    COMPLAINT                             )
    ADJOURNED FROM: 12/1/15 1/12/16       )
    2/24/16 4/4/16 5/6/16 7/22/16         )
    8/29/16                               )
                                          )
[28] ADJOURNED MOTION TO COMPRISE         )
     CONTROVERSY FILED BY ARNOLD          )
     MITCHELL GREENE ON BEHALF OF         )
     RICHMOND LIBERTY LLC                 )
     ADJOURNED FROM: 7/22/16 8/29/16      )
_____ )
                                          )
In re:                                    )
                                          )
RICHMOND LIBERTY LLC           CH: 11     )    1-15-44866-ess
                                          )
WF LIBERTY, LLC v. LIBERTY TOWERS         )    1-15-01197-ess
REALTY LLC ET AL                          )
                                          )
[2] ADJOURNED PRE-TRIAL CONFERENCE        )
    (RELATED DOCUMENT(S) 1 NOTICE OF      )
    REMOVAL FILED BY DEFENDANT RICHMOND   )
    LIBERTY LLC)                          )
    ADJOURNED FROM: 12/17/15 2/24/16      )
    4/4/16 5/6/16 6/3/16 7/22/16          )
    8/29/16                               )
                                          )
[22] ADJOURNED MOTION TO COMPRISE         )
     CONTROVERSY FILED BY ARNOLD          )
     MITCHELL GREENE ON BEHALF OF         )
     RICHMOND LIBERTY LLC                 )
     ADJOURNED FROM: 7/22/16 8/29/16      )
                                          )
[6] ADJOURNED MOTION FOR REMAND AND/OR    )
    FOR COURT TO ABSTAIN FROM HEARING     )
    THE REMOVED RICHMOND COUNTY DJ        )
    ACTION FILED BY SETH EISENBERGER,     )
    SCOTT A KRINSKY ON BEHALF OF WF       )
    LIBERTY, LLC.                         )
```

```
        ADJOURNED FROM: 1/12/16 2/24/16      )
        4/4/16 5/6/16 6/3/16 7/22/16         )
        8/29/16                              )
_____      )
                                             )
In re:                                       )
                                             )
RICHMOND LIBERTY LLC           CH: 11  )      1-15-44866-ess
                                             )
WF LIBERTY, LLC v. LIBERTY TOWERS      )      1-15-01198-ess
REALTY LLC ET AL                             )
                                             )
[2] ADJOURNED PRE-TRIAL CONFERENCE     )
    (RELATED DOCUMENT(S) 1 NOTICE OF   )
    REMOVAL FILED BY PLAINTIFF WF      )
    LIBERTY LLC                        )
    ADJOURNED FROM: 12/17/15 2/24/16   )
    4/4/16 5/6/16 6/3/16 7/22/16       )
    8/29/16                            )
                                             )
[25] ADJOURNED MOTION TO COMPRISE      )
     CONTROVERSY FILED BY ARNOLD       )
     MITCHELL GREENE ON BEHALF OF      )
     RICHMOND LIBERTY LLC              )
     ADJOURNED FROM: 7/22/16 8/29/16   )
                                             )
[6]  ADJOURNED MOTION FOR REMAND AND/OR )
     FOR COURT TO ABSTAIN RE 2009      )
     FORECLOSURE ACTION FILED BY SETH  )
     EISENBERGER, SCOTT A KRINSKY ON   )
     BEHALF OF WF LIBERTY, LLC.        )
     ADJOURNED FROM: 1/5/16 2/24/16    )
     4/4/16 5/6/16 6/3/16 7/22/16      )
     8/29/16                           )
_____      )
                                             )
In re:                                       )
                                             )
RICHMOND LIBERTY LLC           CH: 11  )      1-15-44866-ess
                                             )
[4] ADJOURNED STATUS CONFERENCE.       )
    ADJOURNED FROM: 12/17/15 2/24/16   )
    4/4/16 5/6/16 6/3/16 7/22/16       )
    8/29/16                            )
                                             )
[43] ADJOURNED MOTION TO COMPRISE      )
     CONTROVERSY FILED BY ARNOLD       )
     MITCHELL GREENE ON BEHALF OF      )
     RICHMOND LIBERTY LLC              )
```

```
          ADJOURNED FROM: 7/22/16 8/29/16     )
_____ )
                                              )
In re:                                        )
                                              )
RICHMOND LIBERTY LLC            CH: 11   )        1-15-44866-ess
                                              )
RICHMOND LIBERTY LLC vs. WF LIBERTY LLC   )      1-16-01014-ess
                                              )
[2] ADJOURNED PRE-TRIAL CONFERENCE RE:   )
    [1] NOTICE OF REMOVAL                      )
     ADJOURNED FROM: 2/24/16 4/4/16            )
     5/6/16 6/3/16 7/22/16 8/29/16             )
                                              )
[14] ADJOURNED MOTION TO COMPRISE             )
     CONTROVERSY FILED BY ARNOLD               )
     MITCHELL GREENE ON BEHALF OF              )
     RICHMOND LIBERTY LLC                      )
     ADJOURNED FROM: 7/22/16 8/29/16           )
_____ )
```

U.S. Bankruptcy Court
271-C Cadman Plaza East
Suite #1595
Brooklyn, NY  11201-1800

October 14, 2016
2:34 p.m.

BEFORE THE HONORABLE ELIZABETH S. STONG, Judge

APPEARANCES:

| | |
|---|---|
| For the Plaintiff and Interested Party: | Lori A Schwartz, Esq.<br>ROBINSON BROG LEINWAND GREENE ET AL<br>875 Third Avenue, 9th Floor<br>New York, NY  10022 |
| For the U.S. Trustee: | Nazar Khodorovsky, Esq.<br>OFFICE OF THE UNITED STATES TRUSTEE, BROOKLYN OFFICE<br>U.S. Federal Office Building<br>201 Varick Street, Suite 1006<br>New York, NY  10014 |
| For Guarantors Lieb and Tirza Puritz and Richmond Liberty Guarantors: | John Zachary Marangos, Esq.<br>1134A Hylan Blvd.<br>Staten Island, NY 10305 |

APPEARANCES:    (Continued)

Special Counsel:                    Jeffrey Miller, Esq.
                                    WESTERMAN BALL
                                    1201 RXR Plaza
                                    Uniondale, NY 11556


For Liberty Towers Realty          David Carlebach, Esq.
LLC, Debtor:                        THE CARLEBACH LAW GROUP
                                    55 Broadway Suite 1902
                                    New York, NY 10006


For NCC Capital, LLC,              Jay Bohensky, Esq.
Creditor:                          BOHENSKY ASSOCIATES
                                    2115 Avenue O
                                    Brooklyn, NY 11210


For WF Liberty, LLC:               Abraham J. Backenroth, Esq.
                                    BACKENROTH FRANKEL & KRINSKY LLP
                                    800 Third Avenue, 11th Floor
                                    New York, NY 10022

Proceedings recorded by electronic sound technician, Juliet R.
Lecky; transcript produced by AVTranz.

1          THE CLERK:  Numbers five through twenty-six, all

2    matters regarding Liberty Towers Realty, LLC, Liberty Towers

3    Realty 1, and Richmond Liberty, LLC.

4          THE COURT:  All right.  Good afternoon.  I'm hearing

5    a little space.  As you can hear from the call of the calendar

6    there are a number of matters on, and therefore a number of

7    files on the bench.

8          Let me get your appearances on the record, please.

9       (Clerk to Court)

10          MS. SCHWARTZ:  Good afternoon, Judge.  Lori Schwartz,

11    Robinson Brog for Richmond Liberty.

12          THE COURT:  Okay.  Thank you so much.

13          MR. CARLEBACH:  David Carlebach, Liberty Towers

14    Realty, LLC and Liberty Towers Realty 1, LLC, representing the

15    debtor.

16          THE COURT:  All right.  So we have all three of our

17    debtors represented?

18          MR. MILLER:  Yes, Your Honor.  Jeffrey Miller from

19    Westerman Ball also for Richmond Liberty.

20          THE COURT:  All right.  Thank you very much.

21          MR. BACKENROTH:  Abraham Backenroth for the secured

22    creditor.

23          THE COURT:  Which secured creditor, please?

24          MR. BACKENROTH:  I forget the name now.

25          MS. SCHWARTZ:  W.F.

1          UNIDENTIFIED SPEAKER:  W.F. Liberty.

2          THE COURT:  W.F.  Yes, thank you.

3          MR. KHODOROVSKY:  Nazar Khodorovsky for the U.S.

4    Trustee, may it please the Court.

5          THE COURT:  Thank you very much.

6          MR. BOHENSKY:  Jay Bohensky, Counsel to N.C.C.

7    Capital, LLC, secured creditor --

8          THE COURT:  Thank you.

9          MR. BOHENSKY:  -- in the Liberty Towers, LLC, and

10   Liberty Towers Realty 1, LLC cases.

11         THE COURT:  Yes.

12         MR. MARANGOS:  John C. Marangos for the Guarantors

13   Lieb and Tirza Puritz.

14         THE COURT:  Thank you.  Glad you're here.

15         All right.  Thank you, everybody.  I'd like to begin

16   with status in our Chapter 11 cases.  Let's take them in the

17   order they're on the calendar.  Mr. Carlebach, Liberty Towers

18   Realty status:  how are we doing?

19         MR. CARLEBACH:  I believe we are up-to-date on our

20   U.S. Trustee obligations.  I will make that subject to Mr.

21   Khodorovsky as I know that the Court had given some directives,

22   which I believe we complied with in terms of getting more MORs

23   current on both cases, and spent a fair amount of time with Mr.

24   Spiegel making sure that was all done.

25         THE COURT:  Good.

1          MR. CARLEBACH:  So my belief is that we are current

2    on all our Chapter 11 requirements under the guidelines of the

3    United States Trustee.

4          THE COURT:  Okay.  And that's both for Liberty Towers

5    Realty and Liberty Towers Realty 1?

6          MR. CARLEBACH:  Correct.

7          THE COURT:  All right.  Mr. Khodorovsky?

8          MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

9    the U.S.  That is actually not current, these operating

10   reports.  The August operating report --

11         THE COURT:  Yeah.

12         MR. KHODOROVSKY:  -- was not filed.

13         THE COURT:  I only see through July

14         MR. KHODOROVSKY:  And also, Your Honor, I asked that

15   the -- on the 29th of August, that the hearing on the 29th of

16   August, Your Honor, I'd ask that the Liberty Towers/Liberty

17   Towers 1 debtor come current with their quarterly fees, and

18   that has not happened.

19         THE COURT:  Hmm.

20         MR. KHODOROVSKY:  Staying just with the Liberty

21   Towers Realty case, Liberty Towers Realty has not paid any U.S.

22   Trustee quarterly fees since June of 2015 and currently owes

23   close to $2,000 in U.S. Trustee quarterly fees.

24         THE COURT:  All right.  Mr. Carlebach, I see that the

25   operating report for July does indicate that the debtor is

1  current.  It's not the largest dollar amount but it is a large

2  issue at this point.  It's a persistent --

3        MR. CARLEBACH:  It's frustrating to me because my

4  client keeps telling me that he sent the check out, and I

5  see -- I think I have even seen copies of checks, and for some

6  reason it doesn't -- I don't know why that has not, you know,

7  found its way into the bank -- the coffers of the U.S.

8  Trustee's Office.  But --

9        THE COURT:  Well, this is, like, a year now.  That's

10  a long --

11        MR. KHODOROVSKY:  Your Honor, staying just with the

12  Liberty Towers Realty, LLC case, there have been no payments

13  for about a year and a half.

14        MR. CARLEBACH:  That's not --

15        MR. KHODOROVSKY:  There have been payments made in

16  the other case --

17        THE COURT:  Maybe it's a confusion --

18        MR. KHODOROVSKY:  -- more recently, Liberty Towers

19  Realty 1.  By more recently I mean in March.  There have been

20  none since March of this year.  That's for Liberty Towers

21  Realty 1.

22        THE COURT:  Liberty Towers Realty?

23        MR. KHODOROVSKY:  Realty 1.  In Liberty Towers Realty

24  there have been none for a year and a half.

25        THE COURT:  Okay.  So --



1          MR. KHODOROVSKY:  In Liberty Towers Realty there have

2     been none for six months.  In -- I'm sorry, Liberty Towers

3     Realty, there have been none for six months.

4          THE COURT:  All right.  Mr. Carlebach, is the

5     principal of your client here in court?

6          MR. CARLEBACH:  He's out of the country, Judge,

7     today.

8          THE COURT:  All right.  Would some sort of coercive

9     sanction cause this to happen?  I share your frustration.

10         MR. CARLEBACH:  I'm extremely frustrated because I

11    have had conversations with him, and I don't want to violate

12    attorney-client --

13         THE COURT:  Of course not.

14         MR. CARLEBACH:  -- privilege, but, you know, it's --

15    there's no reason why we should be even having this discussion

16    right now.  So I --

17         THE COURT:  I agree.  I appreciate your position on

18    this and also your frustration.  I'll give the debtor a week,

19    until October 21st, to come current on U.S.T. fees and to file

20    a letter confirming that those -- when will the next quarter be

21    due?

22         MR. KHODOROVSKY:  The next quarterly fees, Your

23    Honor, for the third quarter of 2016, they will be due on the

24    31st of October.

25         THE COURT:  All right.  So by the 21st we're still

1    just looking at the first two quarters?

2         MR. KHODOROVSKY:  Yes.

3         THE COURT:  So if you could file a letter confirming

4    that fees are current by October 22nd, 2016, that way you and

5    your client know that needs to be done, we'll have it on a

6    docket.  I think that should help everyone, actually.

7         MR. KHODOROVSKY:  And Your Honor, what about the

8    operating report?

9         THE COURT:  We need that -- there's one more you need

10   to get on file.  We're looking for August.  We have through

11   July but I don't see August.  Let's have that also -- by the

12   21st I'd like to see both August and September so that you're

13   current on that as well, all right?

14        MR. KHODOROVSKY:  And Your Honor, would that apply to

15   both Liberty Towers and Liberty Towers Realty 1 or just el

16        THE COURT:  We'll get there.  It has been helpful in

17   the past to take these one at a time.

18        MR. KHODOROVSKY:  Okay.

19        THE COURT:  But yes, the answer is yes, it will when

20   we get there.

21        MR. KHODOROVSKY:  Thank you, Your Honor.

22        THE COURT:  All right.  Mr. Carlebach, is there

23   anything else that's helpful for the Court to know?  I --

24        MR. CARLEBACH:  I would just ask if I could trouble

25   Mr. Khodorovsky to just send me an email with the exact amount

1  of the fees that were owed.

2          THE COURT:  I think it would be a good idea --

3          MR. KHODOROVSKY:  Your Honor --

4          THE COURT:  Just for the sake of a clear record.

5          MR. KHODOROVSKY:  -- I actually have the statements

6  with me right now.  I can just give them to him right now.

7          THE COURT:  All right.  All right.

8          MR. CARLEBACH:  That would be excellent.

9          THE COURT:  That would be very helpful.

10          MR. KHODOROVSKY:  If I could pass them down, I

11  brought them with me.

12          THE COURT:  All right.  Thank you very much.

13          So turning -- would anyone else like to be heard with

14  respect to the status in Liberty Towers Realty, LLC?  All

15  right.

16          MR. KHODOROVSKY:  Nothing further from the U.S.

17  Trustee.

18          THE COURT:  All right.  No response?  Let's move to

19  status in Liberty Towers Realty 1, number ten on today's

20  calendar.  Mr. Carlebach, I think we have some of the same

21  concerns.

22          MR. CARLEBACH:  I believe we complied with the order

23  in terms of bringing the operating reports current compliant

24  with your order at the last hearing but we may be -- we may be

25  one or two short in terms of just the general requirements of

1    bringing them -- of -- I think we got everything filed through

2    July.  I don't have the docket in front of me on the 1.

3            THE COURT:  I'm looking for it myself.  Just one

4    second.

5            MR. KHODOROVSKY:  Your Honor, the --

6            THE COURT:  All right.  Let's take a look.

7            MR. KHODOROVSKY:  Your Honor, the operating report --

8    with regard to the operating reports in the Liberty Towers

9    Realty 1 case, the debtor has filed them through July but

10   there's an issue with the July report, and that it's -- I'm

11   sorry, Your Honor, but it's of limited usefulness.  By that I

12   mean is that the July reports in the Liberty Towers Realty 1

13   case consists of four pages of the same page.  It's the first

14   page of the report, just done four times.

15           THE COURT:  The July report?

16           MR. KHODOROVSKY:  Yes, Your Honor, docket number --

17           THE COURT:  Docket number 100?

18           MR. KHODOROVSKY:  -- 115, in the Liberty Towers --

19           THE COURT:  14-45189?

20           MR. KHODOROVSKY:  Actually, I'm sorry, Your Honor,

21   it's 15-45187.  I'm sorry, that report actually has pieces of

22   the Liberty Towers Realty 1 report and the Liberty Towers

23   Realty report.  So, I mean, the reports have been filed but it

24   is confusing.  Liberty Towers Realty 1 has filed a full

25   report --

1          THE COURT:  For July?

2          MR. KHODOROVSKY:  -- for July, docket number 100.

3          THE COURT:  Yes.

4          MR. KHODOROVSKY:  Which there's an issue I would like

5     to raise about.

6          THE COURT:  Okay.

7          MR. KHODOROVSKY:  Specifically, Your Honor, on the

8     next-to-last page of the report, on the balance sheet --

9          THE COURT:  Yes.

10          MR. KHODOROVSKY:  -- it discusses an advance from the

11     principal.  It's not a large amount, Your Honor, it's $1,225.

12     It also reflects -- yeah, the present balance from the

13     principal.  And U.S. Trustee fees listed as unpaid current

14     liabilities.

15          THE COURT:  All right.

16          MR. KHODOROVSKY:  And also there's accrual of fees to

17     accountants and counsel.  It does not say whether these --

18     these look like they're being approved.

19          THE COURT:  It seems to me that scheduling them as

20     accrued as opposed to seeking their approval or seeking the

21     ability to pay them may be somewhat different.  But Mr.

22     Carlebach --

23          MR. KHODOROVSKY:  I just wanted to note that for Your

24     Honor there is an advance --

25          MR. CARLEBACH:  I think the accrual is actually an

1  appropriate way to deal with administrative fees that have not

2  been approved, but it's just a more accurate way of reporting

3  the liabilities, because if you don't accrue them then there's

4  actually a liability accruing that's undisclosed, and which

5  can --

6          THE COURT:  I see that point.

7          MR. CARLEBACH:  -- pop up at any point and create,

8  you know -- the balance sheet that's inherent in every

9  operating report --

10          THE COURT:  Uh-huh.

11          MR. CARLEBACH:  -- should reflect all liabilities.

12  And that's -- I know that's the practice of the EisnerAmper

13  firm, and to me it makes sense to --

14          THE COURT:  So I see the carried small-ish advance

15  from the principal as of 6/30 and also 7/31 of $1,225.  Is that

16  from some period deep in the past of this case?  It was as of

17  June, as of July, just something to clarify, I think.  Of

18  course, if the principal is putting money into the debtor and

19  it's in the nature of the loan that would be something we'd

20  need to be more concerned about.

21          MR. CARLEBACH:  I mean, it's not --

22          THE COURT:  Just something to follow up on, I think.

23          MR. CARLEBACH:  And once again, I think that it's

24  more of a disclosure than anything else, and I'm not --

25  certainly there's been no application to this court for any

1  kind of, you know -- and I'm not opining whether it would be

2  appropriate, but there's no -- I don't think it's characterized

3  as a loan.  It's simply an advance --

4          THE COURT:  It goes back to at least the March report

5  on the balance sheet accrual basis of the debtor.  It also

6  happens to correspond to the dollar -- to the balance in the

7  EIP account.

8          MR. CARLEBACH:  I mean, I would believe --

9          THE COURT:  So --

10         MR. CARLEBACH:  -- those advances would be made to

11  pay U.S. Trustee fees, and I'm not sure why there isn't a

12  disbursement.  That's what I'm trying to figure out.  Like, why

13  isn't there a disbursement of those funds to the U.S. Trustee,

14  and --

15         THE COURT:  So speaking of --

16         MR. CARLEBACH:  Yeah.

17         THE COURT:  I'm sorry.  Speaking of those fees, it

18  seemed to me appropriate here as well to provide a planned

19  consent allowing creditor to direct the debtor in the absence

20  of consent that the debtor will become current on U.S.T. fees

21  and monthly operating reports by October 21st, 2016, and for

22  the avoidance of doubt to file a letter confirming that fees

23  are current by October 22nd, 2016.  May I make that correction

24  here as well?

25         MR. CARLEBACH:  Yes.

1          THE COURT:  Since we've got enough other things to

2    think about in this case, let's get this part taken care.

3          Staying with status in Liberty Towers Realty 1, would

4    anyone else like to be heard?  No response.

5          Ms. Schwartz, let's move to status in your client's

6    Chapter 11 case.

7          MS. SCHWARTZ:  Thank you, Judge.  In the Richmond

8    Liberty case the debtor is current with the filing of its

9    operating reports through September.  I don't believe they've

10   received an invoice yet for the third quarter fees, which Mr.

11   Khodorovsky just said would be due at the end of the month.

12   That will be a minimum fee.  There's been no disbursements and

13   we'll arrange for that to be paid as soon as the invoice is

14   received.

15         THE COURT:  Let me --

16         MR. KHODOROVSKY:  Your Honor, Nazar Khodorovsky for

17   the U.S. Trustee.  In the Richmond Liberty case the debtor is

18   current through September with both -- with its operating

19   reports and no quarterly fees are yet due for third quarter.

20   The debtor is current otherwise.

21         THE COURT:  All right.

22         MR. KHODOROVSKY:  Thank you, Your Honor.

23         THE COURT:  Anything to add?  No response.  Okay.

24         There are a number of motions on the Court's

25   calendar, and the Court has been spending a considerable amount

1   of time addressed to the settlement here.  I want quickly to

2   review the calendar to see if there is anything separate from

3   the various motions to compromise controversy, for example

4   number six on today's calendar, pretrial conferences, the

5   motion to dismiss of the Feuerstein filed by Mr. Feuerstein.

6   In an adversary proceeding the motion to compromise, the motion

7   to compromise, the motion to dismiss again.  I don't think

8   there's any reason to expect to proceed today on the motion to

9   dismiss.  The motion to remand or abstain, motion to

10  compromise -- all right.  So there's no case management loose

11  ends here.  It's not in the nature of these cases that there

12  would likely be such matters because I understand that the real

13  issue here is whether and to what extent the settlement, first,

14  is a settlement, and second, should be approved.

15          I'd like to hear any update first from Ms. Schwartz

16  as the proponent of the settlement.

17          MS. SCHWARTZ:  Judge, update in terms of?

18          THE COURT:  Whether -- I'm, I'll say at this point,

19  quite familiar with the record, the arguments made by the

20  parties, the questions raised in the record.  I have some

21  questions in my own mind about the best way to proceed.  It had

22  been my intention to be able to give you a decision today, and

23  we may well yet get there, but as I have really, really studied

24  the record and the record in the state court there is -- there

25  remain increasingly at least the possibility of some questions

1  in my mind as to whether we have a settlement and whether the

2  question that I need to be addressing first is the

3  enforceability of a settlement, and whether there's been any

4  communication or consideration among the parties between our

5  last hearing date and today.  I have seen and done my best to

6  study the filings that were made, and I don't think there have

7  been many since our last hearing.  There was one today, mid-day

8  or so, 12 o'clock I think, by the lawyer who represents at

9  least in the state court the guarantors.

10          So I have my own questions but I'd like to hear

11  anything that would be helpful to hear from the parties as to

12  anything that has transpired between now and today.  You know,

13  our last hearing included some I think theretofore

14  unanticipated developments in whether the Liberty Towers Realty

15  and Liberty Towers Realty 1 parties remained proponents of or

16  even parties to the settlements, a settlement that they signed,

17  you know, with Counsel.  Likewise, the guarantors.  So kind of

18  an unusual record, one of the more complicated 9019's I think

19  I've seen in some time.  Let me hear from you.

20          MS. SCHWARTZ:  Thank you, Judge.  Judge, just in

21  terms of anything that's transpired since the last hearing,

22  there has been no further filings with the Court other than the

23  document that was filed this afternoon by Mr. Marangos.

24  There's been no further communications between the parties with

25  respect to the settlement.  What the Court has raised really is

1  the issue that came up at the hearing first on July 22nd, and

2  then I believe we were here again on August 26th, or at the end

3  of August.  I don't remember the exact date.

4          THE COURT:  Uh-huh.

5          MS. SCHWARTZ:  At that juncture Mr. Carlebach had

6  said that the debtors, the LTR debtors -- let's call them LTR

7  and LTR 1 --

8          THE COURT:  Yes.

9          MS. SCHWARTZ:  -- had withdrawn their support.

10         THE COURT:  Yes.

11         MS. SCHWARTZ:  And that seemed to be based on a few

12  issues which were raised by N.C.C. this year by Counsel in

13  their initial objections.  First, there was a due process

14  question, which I think has been adequately documented --

15         THE COURT:  Whatever else we've had here we've

16  certainly had a lot of process.

17         MS. SCHWARTZ:  Correct.  And the other issue was this

18  question that keeps coming up with respect to the redemption

19  order and this dispute, and it's obviously very contested

20  between the parties as to whether or not there was a

21  redemption.  But the settlement agreement itself contains

22  representations, and I'm referencing paragraph 6, I believe

23  it's (b) and (c) of the settlement agreement, representations

24  both by W.F. Liberty, the secured creditor, as well as the

25  guarantors that there was no redemption.  So any position taken

1   to --

2           THE COURT:  Well, do you think if parties to a

3   settlement agreed that the State of New York borders the

4   Pacific Ocean that would make it true?  Of course not.

5           MS. SCHWARTZ:  No.

6           THE COURT:  So --

7           MS. SCHWARTZ:  But with respect -- the purpose of --

8           THE COURT:  I take it that they agree that they are

9   no longer disputing that issue.  That's what I take the

10  provision in the -- at a minimum that's what I would take that

11  provision in the settlement to mean.

12          MS. SCHWARTZ:  That there was no redemption?

13          THE COURT:  Yes.

14          MS. SCHWARTZ:  Correct.  The parties are -- W.F. and

15  the guarantors are both stating in the settlement agreement

16  signed by a representative of W.F. Liberty and signed by the

17  guarantors that there was no redemption.

18          THE COURT:  Right.

19          MS. SCHWARTZ:  The objection raised by N.C.C., and it

20  was followed by Mr. Carlebach on behalf of the LTR entities is

21  that somehow there was a redemption.  But regardless of those

22  positions they can't now repudiate the settlement agreement.

23  Not only have they failed to establish fraud, collusion,

24  mistake, or anything to that effect, because the settlement

25  agreement is being presented for purposes of this 9019 motion,

1    the representations that there was no redemption has to stand.

2            THE COURT:  Well, it's a representation and agreement

3    that as an occasional finder of fact I do see a distinction,

4    but I also take the points.  I think it may be that we have

5    evolved to the point, though this has not been briefed by

6    anybody, of whether there's a dispute over the enforceability

7    or an enforcement of the settlement agreement, because that has

8    been put at issue.

9            In studying the transcripts I can see that it was a

10   fairly dynamic hearing and there were times where I'm not sure

11   that I fully understood the arguments that the parties were

12   making; for example, some of the points made about due process

13   and whether there were conflicting representations.  I don't

14   see a question in the record as I understand it today as to

15   whether any party had unconflicted lawyers, for example, and

16   that's such an important concern in the bankruptcy that it was

17   something I needed to be sure I understood, and now I do.  I

18   think I now perhaps have a more thorough understanding as well

19   of the economic issues that are present here.

20           There's been an argument made that the -- by the

21   opponents, by N.C.C., the record opponent of the settlement,

22   secondly lender with respect to the mortgage A and mortgage B

23   properties, that in effect this is a 363 sale.  I think

24   actually that argument is pretty well-rebutted by the

25   proponents of the -- by your client, Richmond Liberty for all

1    the reasons set forth in the papers and for reasons that at

2    some point I may spread upon the record.  I don't really see

3    this as a disguised 363 sale but a question is in my mind as to

4    whether, whatever the consequences would be of this, whether we

5    still have a settlement.  If some of the parties to the

6    settlement say, "No, we don't, we've changed our minds," maybe

7    that's breach of contract.  Maybe that gives rise to a whole

8    new set of claims.

9           MS. SCHWARTZ:  Uh-huh.

10          THE COURT:  And then there is in the background, as

11   you say, the question of whether and to what extent there was a

12   redemption, an issue the parties vehemently disagree upon.  I

13   don't see evidence -- I don't see persuasive evidence in the

14   record before me that the terms of the redemption order were

15   met.  I simply don't see it.  And I assume it might have been

16   put in the record, but I also don't see that that issue is

17   today before me to decide.

18          I think the issue before me today is whether to

19   approve the settlement.  An assumption built into that motion

20   is whether there is a settlement.  I want you to assume again,

21   hypothetically, and I'll try to do better than New York and the

22   Pacific Ocean, the -- imagine a situation where a party came to

23   the Court and said, "That's not my signature.  I have never

24   heard of this settlement.  It's a fraud."  Now, that argument

25   is not being made here.  The argument being made seems to be

1    more in substance, "A bankruptcy court should be about getting

2    the best results for all the creditors and we've got a better

3    result now."  I also don't see any evidence of the better

4    result.  No plan has been filed.  No evidence of a 16 million

5    dollar offer is before the Court.  Promises were made; they

6    were not kept.  Or I shouldn't say promises, that's too big a

7    word, but statements were made with respect to the plan that

8    was going to be filed.  I don't believe any plan has been

9    filed, and we have been paying enormous attention, as we do in

10   every case, to the docket in this case.

11        So those are some of the things I am thinking about.

12   It is a -- we have some time this afternoon.  We don't have

13   unlimited time this afternoon, and I want to use your time as

14   well as I can, but I think that includes setting out as plainly

15   as I can the questions that I am focusing on and the questions

16   that I acknowledge but that I do not see to be before me.

17        So I'm going to give you a couple of minutes to think

18   about how it might make sense best to proceed today.  I'm going

19   to do the same.  I thought it was possible there might be

20   something new to hear from you that I hadn't seen on the

21   docket, and I appreciate that there isn't.  But now knowing

22   that I'd like to take a short break and give you all a short

23   break so that when we come back perhaps I can ask you to be

24   prepared specifically to address this question, whether the

25   oral statement on the record in our prior hearing reflected in

1  the transcript file on August 1st -- but what was the date of

2  that hearing?  July --

3         (Clerk to Court)

4            THE COURT:  July 22nd?  26th?

5         (Clerk to Court)

6            THE COURT:  26th?

7         (Clerk to Court)

8            THE COURT:  22nd, sorry.  That Mr. Carlebach said,

9  yes, they are withdrawing their support from the settlement,

10 whether that's an issue that the Court needs to be concerned

11 with or not.  I would be prepared to hear you on the record.  I

12 would consider a chambers conference if it makes sense.  I'll

13 be the one ultimately who decides that but I'll be very

14 interested in the views of the parties as well, and I'll be

15 back in just a few minutes, or as many minutes, more than a

16 few, as I understand from the courtroom deputy makes sense.  I

17 assume we have at least another hour or so?  Okay.

18            MR. CARLEBACH:  That's fair.

19            THE COURT:  Okay.  Thank you -- fair.  Fair is good.

20            MR. CARLEBACH:  Walking the Brooklyn Bridge would be

21 good for my health but it would -- I don't know if I'm in shape

22 for it.

23            THE COURT:  They've been working very hard behind the

24 building to improve the walkway onto the Brooklyn Bridge but

25 this --

1          MR. CARLEBACH:  Yeah.

2          THE COURT:  -- may not be the day to take advantage

3    of that.

4          MR. CARLEBACH:  No, if you just walk on the bridge

5    it's a great exercise, but if you then go into South Brooklyn,

6    that could be challenging.

7          THE COURT:  All right.  All right.  Thank you so

8    much.

9          THE CLERK:  All rise.

10          MR. CARLEBACH:  Thank you, Your Honor.

11        (Recess from 3:00 p.m. until 3:23 p.m.)

12          THE COURT:  All right.  Ms. Schwartz, it's your

13    motion -- well, there are many motions but it's your motion.

14    Let me hear from you.

15          MS. SCHWARTZ:  Thank you, Judge.  Judge, in

16    responding to the questions posed by the Court before --

17          THE COURT:  Yes.

18          MS. SCHWARTZ:  -- Your Honor took a brief recess, I

19    just want to start by saying that this settlement really came

20    as a result of the court-ordered mediation that the parties

21    participated in.  And while the mediation itself was not

22    successful it did precipitate lengthy negotiations between the

23    parties resulting in the signed settlement agreement, which was

24    signed by the representatives individually of Richmond Liberty,

25    of Liberty Towers Realty, and Liberty Towers Realty 1, by the

1    guarantors, and by W.F. Liberty, each in their representative

2    capacity.

3           The settlement agreement, Richmond submits, meets the

4    9019 standards.  It's actually well above the lowest level of

5    reasonableness.  The Richmond Liberty debtor agreed to increase

6    the purchase price of the property by two million dollars.

7           THE COURT:  What was the auction price?

8           MS. SCHWARTZ:  The W.F. Liberty bid in its lien.  I

9    don't know the --

10          THE COURT:  I'm sorry, what was the contract price?

11          MS. SCHWARTZ:  The contract price was eight and a

12   half million.

13          THE COURT:  All right.  All right.  Please proceed.

14   And then the sale price contemplated in the settlement is 10.5

15   or 10?

16          MS. SCHWARTZ:  I believe it was ten and a half

17   million, Judge.

18          THE COURT:  All right.

19          MR. MILLER:  Ten and a half.

20          THE COURT:  That's what I recall as well.  All right.

21   Please proceed.

22          MS. SCHWARTZ:  And the settlement provides for a --

23   I'm going to say a carve-out for lack of a better expression of

24   $100,000 to be distributed to the Liberty Towers and Liberty

25   Towers Realty 1 estates.

1          THE COURT:  Set aside from the 10.5 or an additional

2    hundred?

3          MS. SCHWARTZ:  No, inclusive of the 10.5.

4          THE COURT:  Okay.

5          MS. SCHWARTZ:  So that's carved out from the 10.5.

6    And that's money that would otherwise be --

7          THE COURT:  Uh-huh.

8          MS. SCHWARTZ:  -- unavailable in the Liberty Towers

9    cases.

10          THE COURT:  Well, of course I'm not proposing fully

11    to go into those issues because we do have the question of

12    whether there is now an enforceable settlement agreement; if

13    there is an enforceable settlement agreement, if it's been

14    breached; if I find that I then can't approve it but we have

15    the prospect of a breach of contract or a tortious interference

16    with contract, or whatever kind of claim might come from that

17    difficult situation.  But I appreciate the value described in

18    the settlement and I appreciate that the -- that N.C.C., who's

19    objecting, stated among other things that there would be filed,

20    that there has not been filed, a plan that would contemplate a

21    purchase price, for what, I'm not sure, because the properties

22    are in title, I assume still LTR/LTR1, but there's an equitable

23    ownership interest, arguably, at least, of the foreclosing

24    creditor and the contract right to purchase of your client.  So

25    we have a lot of bundles of -- a lot of sticks in the bundle of

1  stick of ownership here.  But I'm not asking you to re-argue

2  the motion.

3          Is there anything further from your perspective that

4  would be helpful for the Court to hear?

5          MS. SCHWARTZ:  A few items, Judge.  And I'm not that

6  familiar with state court foreclosure matters.  That might be

7  something that Mr. Miller can address.

8          THE COURT:  Yeah.

9          MS. SCHWARTZ:  But once the gavel went down at the

10  foreclosure sale I believe the title transfers to the referee.

11  Certainly, the equitable title transfers to the successful

12  bidder.

13          THE COURT:  But legal title I assume transfers at

14  closing.

15          MR. MILLER:  Yes.

16          MS. SCHWARTZ:  The transfer of the deed

17          THE COURT:  Which has not occurred.

18          MS. SCHWARTZ:  That's correct.

19          MR. MILLER:  That's correct.

20          THE COURT:  Okay.  So legal title is still in LTR and

21  LTR1.  Isn't that right?  Nominal legal title --

22          MR. MILLER:  Record title.

23          THE COURT:  Record title, thank you.  I knew it was

24  an adjective that I needed.

25          MR. MILLER:  Record --



1          THE COURT:  I'm sorry, it's Friday afternoon.  Record

2    title --

3          MR. MILLER:  But --

4          THE COURT:  -- LTR/LTR1.  Equitable title, W.F.

5          MR. MILLER:  Yeah, but --

6          THE COURT:  Contract right to purchase, Richmond

7    Liberty.

8          MR. MILLER:  Right.

9          MS. SCHWARTZ:  Right.  That's correct.

10         THE COURT:  It's like I'm passing a test here.  Thank

11   you.

12         MS. SCHWARTZ:  Judge, to address the redemption

13   issue, so to speak, not only does the settlement agreement

14   contain a representation that there was no redemption, but it

15   also contains a factual statement at 6B that W.F. did not

16   accept a tender of real property and/or membership interests as

17   part of a redemption of mortgage A and/or mortgage B.  And I

18   think that's an important distinction.

19         THE COURT:  Isn't it pretty clear what the redemption

20   order required?

21         MS. SCHWARTZ:  And that's exactly the point.  The

22   redemption order required transfer of money by electronic funds

23   by a date certain.

24         THE COURT:  And as I'm certain, 12.5 million.  Is

25   that right?

1          MS. SCHWARTZ:  Correct.  It was --

2          THE COURT:  I don't see a shred of evidence in the

3     record that that occurred.

4          MS. SCHWARTZ:  That's correct.

5          THE COURT:  And I suspect at least a shred would have

6     been provided if it had.

7          MS. SCHWARTZ:  And we agree with that position,

8     Judge.  So with respect to this claim of redemption by transfer

9     of deed or membership interest as a placeholder, it doesn't

10    comply with the redemption order.

11         THE COURT:  It seems to me that the record even

12    suggests that it might have been by somebody accepted, and I

13    think it probably is the case that were there an agreement to

14    accept some alternative form of performance, then that would be

15    an agreement.  But --

16         MS. SCHWARTZ:  That's correct.  But it's not.

17         THE COURT:  But it seems a little unilateral the way

18    it's been described so far.  But again, not a matter I've held

19    an evidentiary hearing on.  I have the record before me and

20    it's extensive, but it's, you know, it is what it is.  I'm sure

21    there are gaps.  So --

22         MS. SCHWARTZ:  Judge, with respect to the parties

23    repudiating, we had noted in our papers and set forth on the

24    record that the parties can't simply repudiate on this basis

25    that there's some purported higher offer for the property,

1    setting aside the terms of that offer.  Briefly, you know,

2    there's no -- it's not sufficient to say there's a higher offer

3    out there.  There has to be some evidence of fraud, collusion,

4    mistake, duress, or something.

5         THE COURT:  At this point there isn't even evidence

6    of a firm higher offer.

7         MS. SCHWARTZ:  And that's exactly right.

8         THE COURT:  But I do have a statement of Counsel on

9    the record that the -- they are withdrawing their support from

10   the settlement, lines 23 and 24, page 28 of the transcript

11   that's Document 98 on the record.

12        MS. SCHWARTZ:  I don't think that they can withdraw

13   their support, Judge.  They haven't evidenced their ability to

14   show legally sufficient basis to repudiate the agreement that

15   they signed.

16        THE COURT:  I think it also does provide that a

17   modification needs to be in writing, not oral.

18        MS. SCHWARTZ:  Correct.

19        THE COURT:  These are matters of serious concern.  At

20   the same time, when a party says, "We withdraw our support from

21   the settlement," you know, if I approve the settlement over

22   that stated ostensible withdrawal of support, you know, what

23   happens next?  One of the considerations with respect to

24   settlement approval is whether it brings an end to litigation,

25   and it seems to me we just might be starting the next round of

1    the whole new set of issues.

2          MR. MILLER:  Well, can I just make one point --

3          THE COURT:  I'm concerned about that.

4          MR. MILLER:  I'm sorry, Your Honor.  I interrupted

5    you.  But just one point to address that.  I don't think

6    there's any doubt that the signed settlement agreement cannot

7    be repudiated and they can't withdraw from it because they've

8    signed it.  There are delineated grounds if they want to say

9    that they no longer have to follow it, which would be some type

10   of fraud or collusion.  There's no allegation -- obviously it

11   didn't exist, but they aren't even alleging that.  That's a

12   different issue than them coming in and trying to say the

13   settlement isn't reasonable.  I mean, they can make whatever

14   they want --

15         THE COURT:  I understand the different, and as I --

16         MR. MILLER:  Yeah.  No --

17         THE COURT:  -- tried to indicate, and I probably

18   didn't do it as clearly as I could have, I appreciate the

19   issues under 9019 and the Court's job in assessing the

20   settlement.  But when the record includes a -- in effect, a

21   breach of contract, if it's an enforceable contract, a breach,

22   because I don't yet hear the argument -- Mr. Carlebach, I'll

23   give you a moment to confer.  When the record includes the

24   statement that parties withdraw their support, maybe that's a

25   breach of contract.  Maybe that's the next lawsuit we'll have

1    to hear.  But it's something I have to take -- I have to at

2    least pay some attention to.  And whether there are legally

3    cognizable grounds for that, you know, we may get to the point

4    where I'm going to ask you to brief that, and I'll need to see

5    your -- I'll need to see something more than just, "Gosh, we

6    think we might get a little more money out of a different

7    deal."  Because I think everyone would agree that's not a --

8    that's not a basis.

9          MR. MILLER:  I would just -- right.  I would just

10    leave you with two points, Your Honor.  They could come in and

11    they could through Counsel verbally say that they want to back

12    away from the agreement.  But if the --

13          THE COURT:  And there will be consequences.  I mean,

14    it's --

15          MR. MILLER:  Well --

16          THE COURT:  -- it could be expensive.

17          MR. MILLER:  But no, because this isn't a supply

18    contract where they could back away and there would be monetary

19    damages.  This is a settlement of all the stuff that's been

20    going on that they signed on to, and they're bound to it.  And

21    you're entitled to enforce their agreement.  Now, there are --

22          THE COURT:  That would be -- that motion is not

23    before me.

24          MR. MILLER:  Well, that's what I'm saying.  They

25    haven't made a motion to strike the agreement, to say that it

1    shouldn't be enforceable, to lay out a ground that there's

2    fraud, to lay out a ground that there's collusion, to set forth

3    the factual basis to put it in front of you.  All that's before

4    you today is our motion where they all have signed it to

5    enforce the agreement.  It's clearly fair and reasonable.  Our

6    clients are paying two million dollars more than they required

7    to pay.  And to -- you know, to verbally say you back away

8    isn't a delineated ground.  They've had months to make a

9    motion, months --

10            THE COURT:  Right.

11            MR. MILLER:  -- before today to make a motion before

12    you to lay out one of these grounds, and they haven't done it.

13    And then also to say, well, you can get a better --

14            THE COURT:  Believe me, I know.

15            MR. MILLER:  And then just the last thing I'll say is

16    just to say you can get a better price, I would say,

17    respectfully, that's almost an irrelevant suggestion because

18    the state of the record is that there is a settlement.  Our

19    clients have a contractual right and obligation to buy this

20    property.  This isn't, like you said before, a 363 sale where

21    it's a higher and better bid.  We are the only ones who have

22    the right to buy the property because that's the -- those are

23    the state of the facts before the Court in the record.

24            Now, they could come in and say, "The fact that we

25    have to pay two million dollars more, twenty-five percent more

1   than the price we agreed to just to settle everything isn't

2   reasonable."  They could try to make that argument, although

3   they haven't made that argument.  But to say someone else may

4   pay more for the property, the time for them to pay more was to

5   go bid at the foreclosure sale.  The whole world was on notice

6   of it.  They could have went and bid just like everyone else.

7           THE COURT:  Right.

8           MR. MILLER:  And so that would flip an alarm in New

9   York to say that they have -- someone would have a second

10  opportunity to come in to bid at that foreclosure sale.  So I

11  just wanted to address those two points.  Thank you.

12          THE COURT:  All right.  All right.  Mr. Backenroth?

13          MR. BACKENROTH:  Yes.  I think that the -- first of

14  all, I know of no basis -- I don't know if Your Honor wants to

15  brief it, but certainly they haven't raised it -- where a party

16  enters into a settlement, can repudiate, and it's simply a

17  damage claim.

18          THE COURT:  Oh, there are grounds but the grounds are

19  very hard to meet.

20          MR. BACKENROTH:  Exactly.  Right, and none in this

21  case.

22          THE COURT:  And in on, I would say, five or less

23  occasions I've ruled on such motions in thirteen years.

24          MR. BACKENROTH:  And I --

25          THE COURT:  They're not common.

1          MR. BACKENROTH:  No, no.  It's very extraordinary

2     circumstances where someone comes in, Your Honor posed an

3     extreme case, "It wasn't my signature," fraud -- this is the

4     type of thing that comes sometimes before the Court to

5     repudiate a settlement.  But after you've signed the

6     settlement, to come into court and say, "Oh, I just repudiate

7     it, then therefore it's nothing.  Let's start another round of

8     litigation" --

9          THE COURT:  Uh-huh.

10          MR. BACKENROTH:  -- "concerning a breach of damages

11     claim," I don't think that there's any basis in the law for

12     that.  And they haven't argued that.  They haven't filed any

13     papers to authorize that.  In fact, I think Your Honor had

14     given them an opportunity to further brief any of the issues

15     that were on the table, and one of the issues was their

16     supposed repudiation.

17          THE COURT:  I don't recall sending a schedule but

18     I'll double check that.  But I don't need to set a schedule

19     usually for both parties to file briefs.

20          MR. BACKENROTH:  Your Honor, and it was briefed on

21     our side by debtor's Counsel that standard law that you'd

22     require fraud, misrepresentation, et cetera, in order to

23     repudiate a settlement.  None of that is over here, in addition

24     to the fact that there is no alternative which to consider.

25     There's been no plan filed, no money filed, zero.  In fact,

1    their proposal involved the sale of properties that aren't even

2    subject to all of this activity.  So that is a problem.

3           But finally I think what you have as a problem is

4    that they come in over here -- and Your Honor doesn't try the

5    facts -- but based on the lay of the land the court order that

6    allowed this, in quotes, "repudiation" required a wire

7    transfer, which none of the --

8           THE COURT:  By repudiation do you mean redemption?

9           MR. BACKENROTH:  Redemption, excuse me.  It didn't

10   happen.

11          THE COURT:  There'd be no new issues.

12          MR. BACKENROTH:  Didn't happen.  The only thing that

13   actually happened in state court is that we moved for

14   declaratory determination in state court whether or not we have

15   to accept such a thing.  But we've never acknowledged that we

16   accepted the tender, and then that was the clean title, and in

17   fact all the parties agreed that there was no acceptance.

18   There was further litigation on that question.  No court has

19   ever determined that there was a proper tender, and Your Honor

20   now has that in front of her in determining the settlement, in

21   determining the reasonableness of the settlement as it lies.

22   Your Honor doesn't have to decide whether or not there was or

23   wasn't, but based upon the facts that exist they have a very,

24   very, very tenuous case.  So you now weigh that against a

25   settlement that has been proposed and negotiated by the

1  parties, and I think that if the settlement is adequately

2  reasonable I don't think there's any basis in the law for

3  repudiation of settlement except under limited circumstances,

4  none of which are involved in this case.  But I think Your

5  Honor should approve the settlement.

6        THE COURT:  All right.  Anything further from the

7  proponents of the settlement?  All right.

8        Mr. Carlebach, let me hear from you.

9        MR. CARLEBACH:  The first instance, Mr. Miller's

10  suggestion that there has to be a pleading filed --

11        THE COURT:  Not a pleading, a brief.

12        MR. CARLEBACH:  A brief.  Well, I have filed briefs.

13  I'll address that.  I absolutely cited to the case law, citing

14  a decision in the Phylenes Basement (phonetic) case where the

15  court absolutely ruled --

16        THE COURT:  Uh-huh.

17        MR. CARLEBACH:  -- if there was a higher and better

18  offer the court shouldn't approve the settlement.

19        THE COURT:  I've reviewed those cases --

20        MR. CARLEBACH:  Yeah.

21        THE COURT:  -- and I'm not persuaded by them.

22        MR. CARLEBACH:  I think they're absolutely

23  dispositive.  It just --

24        THE COURT:  We respectfully disagree.

25        MR. CARLEBACH:  Okay.

1          THE COURT:  They're not controlling, Mr. Carlebach.

2          MR. CARLEBACH:  It's not --

3          THE COURT:  You don't mean "absolutely dispositive".

4          MR. CARLEBACH:  They may not be -- they may not be

5   controlling, but I think we just have to think about -- we've

6   all been practicing bankruptcy law for quite some time, and in

7   bankruptcy court the notion of something being subject to

8   higher and better offers -- and there's many settlements where

9   you'll have a settlement of litigation where people buy

10  positions, and the question of, "Is there somebody out there

11  who's willing to pay more money, which will give more money to

12  creditors," the notion -- the key -- the way this came to court

13  is because Mr. Feuerstein, who filed a notice of appearance for

14  N.C. Capital, also represented Richmond Liberty, which was an

15  egregious conflict.  There was no notice of the settlement.

16  The part of the --

17          THE COURT:  Do you question the quality of the

18  representation of N.C.C. at this point?  I don't.

19          MR. CARLEBACH:  Well, not today.

20          THE COURT:  Thank you.

21          MR. CARLEBACH:  But the point is that when the

22  settlement was being -- N.C. Capital effectively -- the counsel

23  for Richmond was the same counsel for N.C. Capital, and of

24  course you can't serve two masters.  And they figured that

25  their bread was buttered with Richmond thing (sic), and so N.C.

1  Capital doesn't get any notice.  The debtor, thinking that N.C.

2  Capital is representing by counsel, who filed a notice of

3  appearance, and then they come into court and say, "What about

4  us?  We'll pay more money."  And that is as compelling a reason

5  as any to repudiate a settlement.  But what I --

6           THE COURT:  Mr. Carlebach, on July 19th, 2016 there

7  was filed with the Court a statement that N.C.C. will shortly

8  be filling a plan which will pay all creditors, including the

9  first and second mortgage in full, and which will value the

10 property in excess of sixteen million dollars.  That has not

11 happened.

12          MR. CARLEBACH:  Perhaps -- well, what N.C. Capital

13 did do was file a contract.  They filed -- they put $500,000,

14 which is still in my account, and the only reason they didn't

15 file a plan -- to file a plan --

16          THE COURT:  They can speak for themselves, Mr.

17 Carlebach.

18          MR. CARLEBACH:  Okay.

19          THE COURT:  They're well-represented.

20          MR. CARLEBACH:  What I would say is the reason we

21 didn't file a plan is because there's clearly a feasibility

22 issue until --

23          THE COURT:  Uh-huh.

24          MR. CARLEBACH:  -- we get a ruling on this thing.  So

25 maybe it was a little hyperbole.  But the point is the

1    statement that there's no money, there's no funds is absolutely

2    untrue.  They filed papers showing it.  The reason why I have

3    to say this is because I represent the debtors.

4             THE COURT:  Uh-huh.

5             MR. CARLEBACH:  We have a fiduciary obligation to

6    creditors, to interest-holders --

7             THE COURT:  Uh-huh.

8             MR. CARLEBACH:  -- to the estate.  You know, it's a

9    debtor's business judgment whether or not a settlement makes

10   sense.  And --

11            THE COURT:  And the task for the Court is distinctly

12   different on a sale subject to higher and better offers and on

13   a settlement approval.  That standard is not in the code, it's

14   not in the rules, and it's not in cases of which I'm aware.

15   It's not to say that the overall bankruptcy purpose of

16   maximizing value to creditors is -- including equity is a piece

17   of the picture.  And whether I can approve a contract that is

18   being breached is a different kind of question.  That's what I

19   find to be the most challenging question on this record.

20            What the consequences would be of that breach is a

21   concerning question to me because I would like to have less,

22   not more litigation for these parties.  I'm very concerned

23   about the extraordinarily lengthy litigation path that has been

24   traveled here.  I see real benefits, it seems to me, for a

25   number of the parties here, some, I'll say, modest financial

1  return for creditors, benefits for guarantors, I think.  Are

2  the guarantors released of personal liability in this

3  settlement that's before the Court --

4          MS. SCHWARTZ:  Yes.

5          THE COURT:  -- that in a situation where the judgment

6  amount exceeds, if you add them together, I think twenty

7  million dollars.  Isn't that right?  That's a lot of money to

8  be --

9          MR. CARLEBACH:  The judgment amount was reduced to

10 twelve and a half million dollars, and the contract -- they had

11 obligations --

12         THE COURT:  The judgment amount or the redemption

13 number, Mr. Carlebach?  Let's be precise.

14         MR. CARLEBACH:  Well, they have obligations to the

15 second mortgagee as well.

16         THE COURT:  Mr. Carlebach, do you dispute that the

17 judgments are -- add up to the number that's in the range I

18 referenced?

19         MR. CARLEBACH:  I don't know whether or not after the

20 Court -- I just simply don't know after the Court --

21         THE COURT:  Okay.  Well, if you don't know --

22         MR. CARLEBACH:  -- reduced the 12.5 --

23         THE COURT:  -- you don't need to take time

24 speculating.

25         MR. CARLEBACH:  -- whether or not the guarantors are

1  obligated.  The Court, as -- it was almost as a sanction,

2  reduced the judgment amount to 12.5.  The redemption amount, I

3  think there's a fair argument to be made that that's the extent

4  of the guarantee.  Once the Court had reduced that --

5          THE COURT:  Well, that's an interesting argument and

6  it's not before me today.

7          MR. CARLEBACH:  But --

8          THE COURT:  But I'm not familiar with case law that

9  would support it.

10          MR. CARLEBACH:  But I think -- but what has to be

11  taken into account is that the guarantors are also personal to

12  the second mortgagee as well.  It's got a four million dollar

13  claim.  And that's why --

14          THE COURT:  And they're not released from that.

15          MR. CARLEBACH:  -- the significance --

16          THE COURT:  I know.  I understand your point.

17          MR. CARLEBACH:  The significance of exactly -- they

18  get -- in their view they get -- and that's why their Counsel

19  is here today.

20          THE COURT:  But Mr. Carlebach, they signed the

21  settlement.

22          MR. CARLEBACH:  I understand, but they didn't --

23          THE COURT:  That's a problem.

24          MR. CARLEBACH:  -- they didn't have Counsel.  In the

25  affidavit of service, you know, Ms. Schwartz --

1          THE COURT:  It's not an affidavit of service, it's an

2    affidavit.

3          MR. CARLEBACH:  -- has characterized the settlement

4    as coming out of the mediation.  She's agreed that it didn't

5    take place during the mediation, but said that it was somehow a

6    byproduct of -- it's unclear to me whether that is or isn't the

7    case.  I will say this:  there was a state court attorney,

8    Mr. Mormel (phonetic) --

9          THE COURT:  Uh-huh.

10         MR. CARLEBACH:  -- who actually represented the

11   debtor in state court who participated in the mediation.  Mr.

12   Marangos represented the guarantors in state court.

13         THE COURT:  Uh-huh.

14         MR. CARLEBACH:  Neither one of those state court

15   attorneys is on the affidavit of service of the settlement.

16   You would think at least Mr. Mormel, who participated in the

17   mediation, would have gotten service.  The notion that both

18   state court attorneys didn't get service of the settlement and

19   didn't know about it I think is very telling.

20         MS. SCHWARTZ:  I just have to interrupt that Mr.

21   Mormel --

22         MR. CARLEBACH:  I would --

23         MS. SCHWARTZ:  -- is the on the affidavit of service,

24   and I was not personally at the mediation but other parties

25   were, and I was advised that Mr. Mormel was there in his

1    capacity as counsel for the guarantors.

2            MR. BACKENROTH:  He was.

3            THE COURT:  And was he on -- is he on the certificate

4    of service?

5            MS. SCHWARTZ:  And he's on the service, yes.

6            THE COURT:  As a courtesy could you show Mr.

7    Carlebach?

8            MS. SCHWARTZ:  Of course.

9            THE COURT:  I'd ask the same courtesy in the other

10   direction.  Let's just make sure we're making arguments that

11   are consistent with the record.  So there we are.

12           MR. CARLEBACH:  I may have missed him.  Apparently

13   he's the last -- close to the last one on --

14           THE COURT:  I imagine it's a fairly long certificate

15   of service.

16           MR. CARLEBACH:  Yes.  I perused it this morning.

17   Because of Mr. Marangos's entry into the case I was curious

18   whether or not he had been notified.  I didn't see his --

19           THE COURT:  It's a good thing to check.  I'm glad you

20   did and it's good to confirm it.  It's --

21           MR. CARLEBACH:  Yeah.  I mean, and --

22           THE COURT:  I'm happy to have one less issue, Mr.

23   Carlebach.

24           MR. CARLEBACH:  Yeah.  You know, Mr. Mormel, if you

25   look in the state court in Richmond County it's clear Mr.

1 Mormel represented the debtors, Mr. Marangos represented the

2 guarantors.  And the right of redemption was given to the

3 guarantors and/or the debtor.

4           THE COURT:  Uh-huh.

5           MR. CARLEBACH:  It's clear in Judge Minardo's order.

6           THE COURT:  Uh-huh.

7           MR. CARLEBACH:  So what I'm saying is that I agree

8 with Your Honor, the standard of 363 per se and 9019 are

9 different standards --

10           THE COURT:  Uh-huh.

11           MR. CARLEBACH:  -- but I think that what I am -- what

12 I was getting at is exactly what Your Honor said, which was the

13 overall bankruptcy purpose of getting the most benefit out of

14 an estate to the most people and the most parties in interest

15 clearly is in keeping with the bankruptcy purpose, and from the

16 debtor's point of view is a good enough reason for us to

17 withdraw the settlement.  I don't need to file a brief to

18 withdraw my support for a motion.  I can stand here --

19 occasionally --

20           THE COURT:  Well, it's not your support for the

21 motion, it's the settlement itself.

22           MR. CARLEBACH:  We are --

23           THE COURT:  That's the concern.

24           MR. CARLEBACH:  There is a 9019 --

25           THE COURT:  If the debtors Liberty Towers Realty and

1  Liberty Towers Realty 1 intend to repudiate, to breach the

2  settlement contract which they signed --

3          MR. CARLEBACH:  We've done that.  We've repudiated --

4          THE COURT:  Then I need to see --

5          MR. CARLEBACH:  Yeah.

6          THE COURT:  -- that briefed, I think.  The issues I

7  proposed, the steps I proposed to the parties in this

8  challenging context are as follows:  I would be prepared to

9  hold with the parties, though I think this is probably a waste

10  of time, a settlement conference; I don't want to waste your

11  time; a referral back to mediation; an accelerated briefing

12  schedule on the question of the breach of the settlement

13  agreement or whether you repudiate it on some legally

14  cognizable ground, and I don't even hear you suggesting that

15  yet, but, you know, I'll give you a week to brief it, or the

16  appropriate amount of time.

17          And then I think I may well have to decide two

18  issues:  if you want to make a motion to find the settlement

19  unenforceable or something like that, otherwise I have a

20  facially valid settlement before me to be measured by the

21  yardstick of Rule 9019.  And it's hard to see on the record

22  before me how it doesn't pass that test.

23          MR. CARLEBACH:  Well, I mean --

24          THE COURT:  So those are the alternatives I see.

25  Settlement conference, that's me, with your clients, mediation,

1    that's with your clients, go back there, briefing schedule.  If

2    we have the contract we have or not I'll let you take your best

3    shot.  I mean, you tell me why -- don't tell me that there's

4    a -- well, tell me what you wish, but --

5            MR. CARLEBACH  Right.

6            THE COURT:  -- I suspect it would not be persuasive

7    to say, "Gosh, we wish we had a better deal," or somebody said

8    there would be a better deal --

9            MR. CARLEBACH:  No, I mean --

10           THE COURT:  -- out there who's prepared to buy these

11   rights for more money.

12           MR. CARLEBACH:  I --

13           THE COURT:  Because remember, of course, what we're

14   settling here is not as -- it's not the usual situation where a

15   debtor owns a piece of property and maybe there's a secured

16   creditor and it's being sold.  It is much more complicated than

17   that, as you know better than I.

18           MR. CARLEBACH:  And that -- okay.

19           THE COURT:  So those are the alternatives as I see

20   them.  And I have tried as hard as I can to see in as many ways

21   as possible the best path forward here, including my original

22   goal of approving or not approving your settlement today.  But

23   I am just concerned that there is a sufficient question in the

24   record -- everyone speaks once before anyone speaks twice -- as

25   to whether parties either believe there is a legal basis to

1  find this unenforceable or are prepared to breach it and pay

2  the consequences.  You know, that's --

3           MR. CARLEBACH:  I'm prepared to breach that, Your

4  Honor.  I think there's an absolute basis to.  But I just

5  wanted to -- one other issue --

6           THE COURT:  Well, be careful what you say, Mr.

7  Carlebach.

8           MR. CARLEBACH:  What?  Excuse me?

9           THE COURT:  I said be careful what you say.

10          MR. CARLEBACH:  Yeah.

11          THE COURT:  It's not your agreement, it's your

12  client's agreement.  But I'll give you an --

13          MR. CARLEBACH:  Yeah.  I just --

14          THE COURT:  Please continue.

15          MR. CARLEBACH:  -- wanted to -- just to conclude --

16          THE COURT:  Thank you.

17          MR. CARLEBACH:  -- the question of a plan, if Your

18  Honor doesn't consider it premature -- in other words, I would

19  like to buttress our position that there is a real offer out

20  there.  And like I said, I've been hesitant to file a plan only

21  because of the litigation that's ongoing.  But if there's any

22  question about the reality -- if that's an evidentiary question

23  I'm happy to put a plan on file with --

24          THE COURT:  The question before the Court appears to

25  be whether there is a settlement agreement or whether there is

1  a breach, whether there's any basis to find that the two

2  parties that you represent that signed it may now withdraw from

3  it.  That seems to be the question before the Court.  We're not

4  having a 363 sale on the settlement agreement.  I'm not looking

5  for higher and better offers in the settlement agreement.

6           MR. CARLEBACH:  Understood.

7           THE COURT:  You have raised the question.  You did it

8  months -- weeks ago, at least, almost months ago, and that's --

9  at the risk of -- well, I'll say not at the risk of, desiring

10  to focus this discussion a bit, that's the question that I see.

11  I need promptly to move ahead to approve or not approve this

12  settlement.  But when the question has been raised, "Is it an

13  agreement," I think that question has to be answered first.  So

14  anything further?

15           MR. CARLEBACH:  Not at this time, Your Honor.

16           THE COURT:  All right.  Thank you.

17           Let me hear next from Mr. Bohensky

18           MR. BOHENSKY:  Thank you, Your Honor.

19           THE COURT:  Thank you.  Please proceed.

20           MR. BOHENSKY:  We support the debtor's right to back

21  out of his contract -- I'm sorry.

22           THE COURT:  What is the right to back out of a

23  contract?

24           MR. BOHENSKY:  Well, again, it's not even --

25           THE COURT:  I mean, we all know the contract is the

1  right to performance or damages for the breach thereof.  I

2  think we learn that in law school.  But --

3          MR. BOHENSKY:  We also learn about conditional

4  precedent.

5          THE COURT:  Uh-huh.

6          MR. BOHENSKY:  Everything the debtor does is subject

7  to the approval, the oversight, the absolute authority given by

8  the court itself, and to some lesser degree to the creditors

9  who move the case along.  As far as this debtor is concerned,

10 imagine if a debtor would walk into a settlement agreement,

11 give away the entire store without approval, or oversight,

12 permission of a court --

13         THE COURT:  But that's why settlements are subject to

14 approval.  If what you're suggesting was the rule, settlements

15 could never occur in bankruptcy cases.

16         MR. BOHENSKY:  Certainly there's --

17         THE COURT:  Because any time a debtor made a

18 commitment and had a second thought they could say, "Well,

19 gosh, Judge, I'm counting on you to bail me out."  The system

20 does not work that way, nor could it.

21         MR. BOHENSKY:  It couldn't work any other way without

22 having some sort of underlying presumption that this has to

23 work.

24         THE COURT:  Uh-huh.

25         MR. BOHENSKY:  The court has to be able to have a say

1    whether this makes sense --

2            THE COURT:  I agree.

3            MR. BOHENSKY:  -- that -- everything is subject to

4    the court.

5            THE COURT:  What I see actually does make some good

6    sense to me.

7            MR. BOHENSKY:  Without even any input at all from the

8    creditors as to whether or not this -- and I'm not saying the

9    Court is not considering -- I apologize --

10           THE COURT:  How could you say there's been no input?

11   Look at the record.

12           MR. BOHENSKY:  I'm sorry?

13           THE COURT:  There's been a good deal of input.

14           MR. BOHENSKY:  Correct.

15           THE COURT:  The Court has benefitted from an

16   extensive record and excellent Counsel.

17           MR. BOHENSKY:  Notwithstanding, it's certainly

18   subject to the Court's decision to decide --

19           THE COURT:  Correct.

20           MR. BOHENSKY:  -- whether or not the debtor had even

21   the right to make the proposal, and once they made the right to

22   proposal, again, it's not even -- it's not even an offer --

23           THE COURT:  I'm sorry, which debtor --

24           MR. BOHENSKY:  -- it's not even a binding agreement

25   yet.

1          THE COURT:  Well, I'm satisfied the debtor -- that

2   all of the debtors, and there are three, had the ability to

3   enter into this agreement.  I don't see an issue there.

4   Whether it meets the 9019 standard is a question before me to

5   decide.

6          MR. BOHENSKY:  So just to clarify, just to make sure

7   I understand, if a debtor signs away everything, then --

8          THE COURT:  Mr. Bohensky, can we agree that it's not

9   my job to answer your questions?

10          MR. BOHENSKY:  I'm just clarifying what the -- Your

11   Honor said before.  That's all.

12          THE COURT:  Thank you so much.  Please proceed.

13          MR. BOHENSKY:  Thank you.

14          THE COURT:  I can imagine there would be settlements

15   that would not meet the 9019 test.

16          MR. BOHENSKY:  But that wasn't even raised --

17          THE COURT:  It's my job to apply that test.

18          MR. BOHENSKY:  That issue was not even raised today,

19   not in any of the hearings.

20          THE COURT:  Of course it's raised.  It's on my

21   calendar.

22          MR. BOHENSKY:  The issue about whether or not there

23   was -- the debtor could back out or not because of whether

24   there was a precondition that had to be subject to the approval

25   of the Court.

1          THE COURT:  Please --

2          MR. BOHENSKY:  It's in every single agreement that

3   gets put before the Court by a settlement.

4          THE COURT:  Correct.

5          MR. BOHENSKY:  It's subject to the Court's approval.

6          THE COURT:  Yes, it is.  And I'll do my job.

7          MR. BOHENSKY:  Understood.  But to say that he had no

8   right, that it's breach, and it's a regular contract outside of

9   the bankruptcy form where if you gave your word, your word is

10  your bond, everybody understands that when you walk into

11  bankruptcy court your word is not -- it's worthless because

12  your word has to be subject to the approval of the court.

13         THE COURT:  I respectfully disagree that everybody

14  understands that when you walk into bankruptcy court your word

15  is worthless.  And if I did not state my disagreement with that

16  proposition I would not be doing my job.  Please continue.

17         MR. BOHENSKY:  Thank you, Your Honor.  I was merely

18  making the point.  I was not saying that in every single case

19  it was that way.  But everyone understands that that's the

20  precondition.

21         THE COURT:  Yes.  And I'll do my job and decide

22  whether to approve the settlement.

23         MR. BOHENSKY:  I wasn't even saying that Your Honor

24  wasn't doing her job.

25         THE COURT:  Okay.

1     MR. BOHENSKY:  Your Honor is definitely doing her

2  job.

3     THE COURT:  Thank you.

4     MR. BOHENSKY:  We've been back here so many times

5  that Your Honor's been so patient with us --

6     THE COURT:  Uh-huh.

7     MR. BOHENSKY:  -- has reviewed all the papers, that

8  are voluminous, as Your Honor's mentioned.  That's for certain.

9     THE COURT:  We have an extensive record.

10     MR. BOHENSKY:  Correct.

11     THE COURT:  I benefit from an extensive record.

12     MR. BOHENSKY:  The question is whether he has -- the

13  debtor, sorry, has the right to back out.  Now, as far as the

14  statement that was made on the record -- and again, Your Honor

15  wished to focus with this hearing with respect to the approval

16  of the settlement, but it was stated on the record, it just

17  needs to be addressed because Your Honor had mentioned it.  And

18  as far as the Plaintiff's concerned we've done everything short

19  of filing the plan in order to show that we are real, and the

20  reason why we haven't filed the plan is because without a

21  ruling on this issue we face a very serious feasibility issue.

22  It's premature, and if Your Honor on the other hand felt so

23  strongly about it we certainly would --

24     THE COURT:  I don't have feelings --

25     MR. BOHENSKY:  Well, then we would --

1          THE COURT:  -- about this matter.

2          MR. BOHENSKY:  We would certainly if Your Honor gave

3   us a schedule by when we'd have to file a plan, we would

4   certainly file one.  We just didn't think -- we felt that it

5   would be ostentatious to act as though the Court had already

6   ruled on this matter or -- and decide on our own whether or not

7   we had the right to do this.  Once Your Honor has made a ruling

8   on this matter then we have the right to proceed.  If we were

9   to proceed as though we don't care what the Court decided and

10  we're going to move as though this is an asset of the estate

11  and we can make the plan of reorganization so that we can

12  purchase it, that's -- it's a little bit -- I'm sorry, to quote

13  a Yiddish term, chutzpadic (sic).

14          THE COURT:  I think you mean presumptuous, not

15  ostentatious.

16          MR. BOHENSKY:  Presumptuous, I'm sorry.  Ostentatious

17  just means something else.  But that's the word I'm looking

18  for.

19          THE COURT:  All right.

20          MR. BOHENSKY:  So again, we've done everything --

21          THE COURT:  You're --

22          MR. BOHENSKY:  -- short of it --

23          THE COURT:  Any party may make any filing permitted

24  by the code or rules at any time.

25          All right.  Anything further?  Your comments have

1    been helpful to the Court.

2            MR. BOHENSKY:  But I just --

3            THE COURT:  Thank you very much.

4            MR. BOHENSKY:  -- to end off what I just said, that

5    we've done everything short -- we've put the money in, 500,000,

6    a half a million dollars has been cleared into the debtor's

7    attorney's account.  We've signed the contract that was filed

8    with the Court in our papers, in the exhibit, for the purchase

9    subject to the approval of the Court.  Our funder is here who

10   brought his proof of funds.  Again, it's not a record yet, it's

11   not on -- because Your Honor requires that it be filed, I

12   understand.  But that would be part of the plan.  That's why

13   it's --

14           THE COURT:  I don't have any special requirements

15   outside of the code and the rules.

16           MR. BOHENSKY:  Chambers rules, I was informed by

17   Judge's clerk, that if you -- if there's anything that has to

18   be considered by the Court it must be filed in advance.

19           THE COURT:  Well, that's certainly a fair statement

20   that I think in a general way the requirements of due process

21   are that anything to be considered by the Court should be

22   served and filed, or in an evidentiary hearing offered pursuant

23   to the usual practices.  That's not a remarkable thing to

24   think.  That protects everybody, respects due process.

25           MR. BOHENSKY:  Thank you, Your Honor.

1          THE COURT:  All right.  Thank you very much.

2          Who else would like to be heard who has not yet

3   spoken?

4          MR. MARANGOS:  Judge, the only thing I would like --

5          THE COURT:  Let's stay with Counsel.  Let's stay with

6   Counsel, please.

7          MR. MARANGOS:  John Marangos, I represent the

8   guarantors.

9          THE COURT:  Thank you, sir.  Please proceed.

10          MR. MARANGOS:  With all respect, Your Honor, you said

11   there was no evidence as to compliance with the order.  Well,

12   I --

13          THE COURT:  Well, the wire -- the electronic

14   transfer --

15          MR. MARANGOS:  Yes.  I just want to say --

16          THE COURT:  -- of 12.5 million dollars?

17          MR. MARANGOS:  I want to point out a certain set of

18   facts to Your Honor.

19          THE COURT:  Are there documents in the record you can

20   point me to?

21          MR. MARANGOS:  Judge, I -- well, they were

22   basically -- in the state court basically what happened was

23   that they were -- Richmond Liberty was rebuked for forum

24   shopping, and before the judge rendered his actual decision on

25   whether or not there was compliance they ran here.  So an old

1    rule of law that I am very well-aware of, and I think the Court

2    would know, is an admission by conduct.  And what is their

3    conduct?  Their conduct --

4              THE COURT:  Is there evidence of -- was there a

5    wire -- is it your position as an officer --

6              MR. MARANGOS:  No.

7              THE COURT:  -- of the court --

8              MR. MARANGOS:  No, Judge.

9              THE COURT:  -- that there was compliance --

10             MR. MARANGOS:  That's not what I said.

11             THE COURT:  -- with the requirement -- please, may I

12    finish?

13             MR. MARANGOS:  Yes, Your Honor.

14             THE COURT:  Thank you, sir. Are you stating as an

15    officer of the court that there was compliance with the

16    requirement in the redemption order to transfer by, I believe

17    the phrase is "electronic funds", sum of 12.5 million dollars?

18    Did that occur?  Is it your statement that that occurred?

19             MR. MARANGOS:  What my statement is, and what I've

20    said and will say it again, was that the judge was going to

21    render a decision whether or not there was substantial

22    compliance with his own order.  And this was after he had

23    chastised --

24             THE COURT:  But you're not able to represent to the

25    Court that 12.5 million dollars in electronic funds --

1          MR. MARANGOS:  I'm not going to represent that --

2          THE COURT:  Okay.

3          MR. MARANGOS:  -- because that didn't happen.

4          THE COURT:  All right.  Thank you.

5          MR. MARANGOS:  But I just wanted to point out --

6          THE COURT:  For the sake of a clear record --

7          MR. MARANGOS:  For the clear record --

8          THE COURT:  -- you said, "I'm not going to represent

9  that because that did not happen"?

10          MR. MARANGOS:  That did not happen, Judge.

11          THE COURT:  Okay.

12          MR. MARANGOS:  And what I'm saying is there was

13  substantial compliance.  An order -- a determination was going

14  to be rendered by the court, whose order it was --

15          THE COURT:  Uh-huh.

16          MR. MARANGOS:  -- and they then ran to two courts.

17  They not only ran to the Supreme Court of New York County --

18          THE COURT:  A lot of courts.

19          MR. MARANGOS:  -- to attempt to avoid Judge Minardo's

20  decision, they came here.  So Your Honor, as I pointed --

21          THE COURT:  And I'm sorry, who is the "they"?

22          MR. MARANGOS:  Richmond Liberty and the people who

23  declared bankruptcy moved the case from Richmond County to here

24  for Your Honor to --

25          THE COURT:  So you're referring to all three of the

1  debtors, Liberty Towers Realty, Liberty Towers Realty 1 --

2          MR. MARANGOS:  No, I'm referring to Richmond Liberty.

3          THE COURT:  Only to Richmond Liberty, which was the

4  third filed case, was it not?

5          MS. SCHWARTZ:  Correct.

6          THE COURT:  So two other debtors had come, or "run",

7  to use your verb, to bankruptcy first, had they not?

8          MR. MARANGOS:  We --

9          MR. CARLEBACH:  Judge --

10         THE COURT:  Let's have one Counsel at a time, please,

11 Mr. Carlebach.  You had time.  Please sit.

12         MR. CARLEBACH:  But I think --

13         THE COURT:  Mr. Carlebach, please be seated.  Thank

14 you so much.

15         MR. MARANGOS:  Judge, what I'm saying to was that the

16 state court was about to render a decision in its own order.

17         THE COURT:  Right.

18         MR. MARANGOS:  And who better to determine its own

19 order but the judge who rendered it?  And what happened was

20 they then went to another state court to try and circumveil

21 (sic) that, and then they removed it to this court.  And by

22 "they" I'm saying Richmond Liberty.

23         THE COURT:  Yes.

24         MR. MARANGOS:  And that is the tale that I'm telling.

25         THE COURT:  And that's one of the six adversary

1    proceedings.  Isn't that right?

2              MS. SCHWARTZ:  Correct.

3              THE COURT:  Yes, okay.  I'm aware of those facts.

4              MR. MARANGOS:  All right.

5              THE COURT:  I'm aware of those facts.

6              MR. MARANGOS:  I just wanted to point that out to the

7    Court.

8              THE COURT:  All right.

9              MR. MARANGOS:  Thank you, Your Honor.

10             THE COURT:  But it's helpful to have your

11   confirmation with respect to the 12.5 million question because

12   it was not -- I did not see evidence in the record, but you've

13   clarified that in an unambiguous way and it's helpful.

14             MR. MARANGOS:  Thank you, Judge.

15             THE COURT:  All right.  Everyone I think who had

16   something to say has spoken once.  We're staying with Counsel.

17   So you can confer with your lawyer.  I urge you to confer with

18   your lawyer, the gentleman sitting behind.  I can see it.  You

19   can't because he's sitting in the public seats.

20             MR. MILLER:  May we do it while the Judge stays on

21   the bench for a moment?  If that --

22             THE COURT:  Sure.  Yes, let's take a --

23             MR. MILLER:  Because that -- it's just helpful to --

24             THE COURT:  I'm going to step into the hallway to

25   permit conversations in an ordinary voice, and then I will come

1  back, and then we'll set a schedule.  All right?  Thank you

2  very much.  But thank you, your arguments were very helpful.

3         THE CLERK:  All rise.

4      (Recess)

5         THE COURT:  Please be seated again.

6         MR. CARLEBACH:  Thank you, Your Honor.

7         THE COURT:  All right.  You've had a brief moment to

8  confer with your clients and each other.  Is there anything

9  that hasn't been settled already that you would like to add to

10  the record?  I see no response.

11         MR. MILLER:  No, Your Honor.

12         THE COURT:  All right.  Thank you.  Do you see any

13  value in a similar conference with the Court?  I don't.  Do you

14  see any value in a referral back to mediation?  I have to say I

15  don't.  You can go there yourself if you wish.  I'm going to

16  ask -- the statement has been -- well, a number of statements

17  were made, but the question was framed, I think by Mr.

18  Bohensky, the question is whether the debtor has the right --

19  the debtors meaning Liberty Towers Realty and Liberty Towers

20  Realty 1 -- have the right to back out of the settlement.

21         Mr. Carlebach, if you'd like to file a brief on that

22  I will give you, noting the holiday period, I would say a week,

23  but I think to give you a week I should give you two weeks.

24  Does that sound right?  October 28th if you'd like to brief

25  that?

1          MR. CARLEBACH:  Yeah, I would appreciate that only

2   because we have the holidays in-between, so the 28th would be

3   excellent.

4          THE COURT:  10/28, served and filed, to be received.

5   I'd like that by noon on the 28th.

6          And how much time would you like to respond?

7          MS. SCHWARTZ:  Two weeks, Judge.

8          THE COURT:  Makes sense to me.  November 4th,

9   November 11th.  Oh, Veterans Day, federal holiday.  The 10th or

10  the following Monday?  You can have either one.

11         MS. SCHWARTZ:  I'm sorry, I lost track of the date.

12  You said --

13         THE COURT:  There's a situation.  Two weeks would

14  land on November 11th, which is our Veterans Day federal

15  holiday, which is not an appropriate day as a deadline.  I can

16  push it back to the 10th or push it forward to the 14th.  It's

17  up to you.  The rules would push it forward.

18         MS. SCHWARTZ:  Yes.

19         THE COURT:  All right.

20         MS. SCHWARTZ:  The 14th, please.

21         THE COURT:  The 14th.

22         MS. SCHWARTZ:  Thank you.

23         THE COURT:  By noon.  We'll be consistent on the

24  noon.

25         And then we need a time for a hearing.  Let's see if

1   we can fit it in.

2          MR. CARLEBACH:  Your Honor, could I ask for a brief

3   time to reply, say until the 18th?

4          THE COURT:  All right.  Those are firm dates.  And

5   again, I want to indicate as clearly as I can that this is for

6   the limited purpose of briefing in the context of the

7   settlement approval motion the question of whether the debtors

8   have the ability to breach or renounce the settlement.  It's I

9   guess a question over whether the settlement should be enforced

10  or not.  And then we'll have a hearing on that.  Let me see if

11  we can find time during the short holiday week.  It will be

12  tough.  I'm not going to ask you to come on the afternoon of

13  Wednesday the 23rd though it is an open time in my calendar.

14  It might be in yours as well.

15         MR. CARLEBACH:  The following week, you know, seems

16  like a good week, at least on my calendar.

17         THE COURT:  The afternoon of the 28th seems possible

18  for now.

19         MS. SCHWARTZ:  I didn't hear --

20         THE COURT:  Monday?

21         MS. SCHWARTZ:  What date --

22         THE COURT:  I'm sorry, I'm losing my voice.  The

23  afternoon of the 28th.

24         MS. SCHWARTZ:  I have another hearing on the 28th.

25         THE COURT:  The morning of the 29th?

1          MS. SCHWARTZ:  I'm not sure what time it is yet.

2          THE COURT:  All right.  The morning of the 29th?

3    Let's say the morning of the 29th at least for now.  I hope we

4    don't have to move it.  If we do, we'll let you know.  All

5    right?

6          MR. CARLEBACH:  What time --

7          MS. SCHWARTZ:  What time --

8          THE COURT:  10:00.  9:30.  I'm sorry, let's say 9:30.

9    9:30 on the 29th.

10          MR. KHODOROVSKY:  November 29th at 10 a.m., Your

11    Honor?

12          MR. CARLEBACH:  9:30.

13          MS. SCHWARTZ:  9:30.

14          THE COURT:  No, I just --

15          MR. KHODOROVSKY:  9:30.

16          THE COURT:  -- switched it to 9:30.  If we need to

17    adjust that, we're still putting together the calendar for that

18    week.  But I think that works.  We'll do our best to make it

19    work.

20          MR. KHODOROVSKY:  And Your Honor, may I respectfully

21    request that all the status conferences be carried to the 29th

22    as well?

23          THE COURT:  We'll carry everything on the calendar to

24    that same day.  You know what you need to do to stay current.

25    Mr. Carlebach, you've got a couple of compliance things to take

1    care of.  Please -- I'll be grateful that you can get our)

2    schedule --

3            MR. CARLEBACH:  We will make every effort to --

4            THE COURT:  Thank you so much.

5            MR. CARLEBACH:  -- bring that current.

6            THE COURT:  Yes.

7            MS. SCHWARTZ:  We had filed a letter that the Court

8    had so ordered extending all the deadlines through today's

9    date.  Can we --

10           THE COURT:  I think we should do that again.

11           MS. SCHWARTZ:  -- have those extended --

12           THE COURT:  I think --

13           MR. CARLEBACH:  We have no problem with that.

14           MS. SCHWARTZ:  -- with everyone's consent?

15           THE COURT:  Yes.

16           MS. SCHWARTZ:  Is there a need to file a letter or

17   can we just are the on the record that that's --

18           THE COURT:  I think a letter probably is a clarifying

19   thing.

20           MS. SCHWARTZ:  Okay.  Fine.

21           THE COURT:  I'll orally so order the record to that

22   effect subject to you getting the letter in early next week.

23           MS. SCHWARTZ:  Thank you.

24           THE COURT:  I realize it is Friday afternoon.  And

25   that protects the record and protects all of you, and that's a

1   good thing.

2          All right.  Thank you very much.

3          MS. SCHWARTZ:  Thank you, Judge.

4          MR. KHODOROVSKY:  Thank you.

5          MR. CARLEBACH:  Thank you.

6          MR. KHODOROVSKY:  Thank you, Your Honor.

7          THE CLERK:  All rise.

8          MR. KHODOROVSKY:  Have a good weekend, Your Honor.

9          THE COURT:  Same, the same.  And as appropriate,

10  happy New Year.

11          MR. MILLER:  Thank you.

12           MR. CARLEBACH:  Thank you.

13       (Proceedings Concluded)

14

15     I certify that the foregoing is a correct transcript from

16  the record of proceedings in the above-entitled matter.

17

18  Dated: October 21, 2016

                                    AVTranz, Inc.
19                                  7227 N. 16th Street #207
                                    Phoenix, AZ  85020
20

21

22

23

24

25